### BAXTER et al. v. BAXTER. (No. 6207.)

(Court of Civil Appeals of Texas. Austin. Oct. 13, 1920.)

1. **Husband and wife ⬦122—Property purchased by wife held her separate property.**

Where wife purchased land in own name, made cash payment with her separate funds, and executed purchase-money notes without husband joining therein, the land became her separate property.

2. **Husband and wife ⬦148—Husband's failure to join in purchase-money notes held not to invalidate vendor's lien.**

Where wife purchased land as her separate property with husband's consent and approval, husband's failure to join wife in executing purchase-money notes secured by vendor's lien did not affect validity of lien.

3. **Husband and wife ⬦148—Coverture held not to defeat vendor's lien, securing notes in which husband did not join.**

Where husband did not join wife in execution of purchase-money notes on her purchase of land as her separate property, wife, after electing on death of husband to hold the property, could not defeat lien by plea of coverture, since the husband's failure to join in execution of notes did not render them void, but at most voidable.

4. **Estoppel ⬦86 — Purchaser representing validity of vendor's lien notes estopped to deny validity.**

Wife, having induced third person to purchase notes by representations as to validity of vendor's lien securing the notes, will be estopped to assert invalidity of lien by reason of husband's failure to join in execution of notes.

5. **Statutes ⬦64(7)—Statute as to extension of period for enforcing vendor's lien valid in part, though proviso unconstitutional.**

Acts 33d Leg. 1st Called Sess. (1913) c. 27 (Vernon's Sayles' Ann. Civ. St. 1914, art. 5695), is valid in so far as it provided for extension of period of limitations in which to enforce vendor's lien by filing of acknowledged contract of extension, even though proviso relating to revival of remedies already barred should be. held unconstitutional.

6. **Husband and wife ⬦274(1)—Expenditure of community funds on wife's separate property did not entitle children to defeat vendor's lien.**

Where wife purchased land as her separate property, but made payments of interest on vendor's lien notes and paid for improvements on the property with community funds, the expenditure of community funds for such purpose did not entitle children to defeat foreclosure of vendor's lien, but entitled them, at the most, to an accounting and perhaps a lien, but subordinate to the right to have vendor's lien foreclosed.

Appeal from District Court, Williamson County; Ireland Graves, Judge.

Suit by W. E. Baxter against Mrs. Lydia J. Baxter and others. Judgment for plaintiff, and defendants appeal. Affirmed.

Cooper Sansom and W. H. Nunn, all of Georgetown, for appellants.
Lawhon & McNair, of Taylor, for appellee.

BRADY, J. The appellee, W. E. Baxter, at the request and for the accommodation of appellant, Mrs. Lydia J. Baxter, who was the wife of his brother, acquired, by purchase, the .notes and vendor's lien in controversy, and brought suit for a foreclosure of the lien against her and her two minor children; her husband having died prior to the suit. The minor children were represented by a guardian ad litem, the court having appointed competent counsel for that purpose. The judgment was in favor of appellee for foreclosure of his vendor's lien upon the land in question as against all defendants for the amount shown to be due on the notes, in so far as the property foreclosed upon would pay the same, but the court did not render any personal

---

judgment against either of the defendants. From this judgment all of the defendants have appealed.

The issues on the trial are fairly disclosed by the conclusions of the trial judge, which are as follows:

"(1) I find that on November 27, 1909, defendant Lydia J. Baxter, executed and delivered to John Bridges three promissory notes, each for the sum of $300, more particularly described in the 1st paragraph of plaintiff's original petition. That no payments have been made thereon other than the interest up to January 1, 1915. That at the date of the judgment the amount due thereon, according to their tenor, was the sum of $900, principal, $321 interest, and $122.10 attorney's fees.

"(2) That the notes above mentioned were given in part payment for the real estate described in the second paragraph of the petition, conveyed by said Bridges to defendant Lydia J. Baxter by deed bearing even date with the notes, in which lien was expressly reserved to secure payment of the notes.

"(3) In addition to the notes, said defendant paid to Bridges a cash consideration of $600, as recited in the deed. At that time Lydia J. Baxter was the wife of J. W. Baxter, but the cash payment was made with money which had been derived from the sale of Lydia J. McCoy (afterwards Lydia J. Baxter) of lands which had been the community property of McCoy and wife. Such lands were sold by Mrs. McCoy after the death of her first husband, McCoy, and prior to her marriage with J. W. Baxter.

"(4) At the time the notes sued upon were executed, the defendant Lydia J. Baxter was the wife of J. W. Baxter. Some years prior to that time he had been legally adjudged to be insane, and had at intervals been an inmate of the state lunatic asylum. He had recovered sufficiently to be released from the asylum on furloughs, in some instances for several months at a time, but had never been discharged as cured; nor was he at any subsequent time adjudged to be sane.

"At the time of the execution of the notes by Mrs. Baxter she was residing in Georgetown, Williamson county, with her minor children, and her husband was practicing his profession as a dentist at Florence, in the same county. As opportunity afforded, Dr. Baxter visited his family in Georgetown. On such an occasion Mrs. Baxter discussed with him the purchase of the Bridges property and he expressed the opinion that the property was worth the money at which it had been offered to her by Bridges, and advised her to make the purchase. At that time his mental condition appears to have been temporarily sound.

"(5) Because of the fact that the cash part of the consideration was considered by Dr. and Mrs. J. W. Baxter as her separate funds, it was their intention that the property should be deeded to her in such form as to make the property her separate estate. The property was deeded to Lydia J. Baxter, but the deed does not expressly vest the title in her separate estate. Both Dr. Baxter and Mrs. Baxter believed that the deed in the form in which it was executed did place the title in her separate estate, subject, of course, to the vendor's lien.

"(6) On April 17, 1911, Dr. Baxter's mental condition having grown very much worse, he was again on that date adjudged to be insane, and was placed in the state lunatic asylum. Such was his condition at the time of the purchase by plaintiff of the notes sued upon, and such continued to be his condition up to the time of Dr. Baxter's death, on October 2, 1915.

"(7) During the year 1912, while Dr. Baxter was in the asylum, Mrs. Baxter, being unable to meet the payments due on the notes, and fearing foreclosure proceedings by the holders thereof, by letter advised the plaintiff (her husband's brother) of her situation and of her apprehensions, and requested him to purchase the notes in order to prevent a foreclosure.

"The plaintiff resided in Louisville, Ky., and the defendants in Georgetown, Tex.

"(8) John Bridges, the original payee, having died, Mrs. Baxter, the defendant, negotiated for the purchase of the notes with the agent who held them, and who purported to represent the heirs of John Bridges. After several letters had been exchanged between plaintiff in Kentucky and Mrs. Baxter, the former agreed to purchase the notes, and for that purpose arranged with the bank of Georgetown to pay over the money upon delivery of the notes with written transfer thereof to him.

"On or about September 17, 1912, J. H. Bridges, son of John Bridges, and others purporting to be the latter's heirs, executed and acknowledged for record and delivered with the notes to plaintiff a written transfer of the notes, together with the vendor's lien, contract lien, and such other rights, titles, and equities as they owned in and to the land hereinabove mentioned. This instrument was recorded in September, 1912, in volume 138, page 610, of the deed records of Williamson county.

"(9) Plaintiff, at the time of the transfer paid in cash to said assignors the amount due on said notes, and has continued to hold the same thereafter up to the time of the trial, during which trial they were introduced in evidence by plaintiff.

"(10) Plaintiff purchased said notes in order to accommodate the defendant Mrs. Baxter, relying upon the truth of her representations as to the validity of the notes and as to the lien by which they were secured. He would not have bought the notes except for her importunities and her representations that they were valid, and that the lien by which they were secured was valid, and that the value of the property on which a lien was reserved was sufficient to render the investment a safe one.

"(11) In a letter dated June 21, 1912, from Mrs. Baxter to plaintiff, the following statements occur:

"'The deed is in my name. Whitford wanted it that way because the six hundred dollars we paid down was my property before we were married. * * *

"'Any one buying the notes is perfectly safe, as whole place stands good for them, and it is worth twice that amount.'

"Whitford was Mrs. Baxter's husband, Dr. J. W. Baxter, plaintiff's brother. He was at

that time in the state lunatic asylum at Austin.

"In letters to plaintiff dated July 19, 1912, Mrs. Baxter made the following statements: 'Whitford's name does not appear on notes either. I have consulted a good lawyer, he tells me that a vendor's lien note is good, and can be enforced any time so long as the purchase money is unpaid, if it be 40 years, and he advises that you can have the notes now outstanding transferred to you which is as good security as you can get on the property, no need of drawing up new papers. Now parties have notified me that they won't wait longer than August 1st, which is almost here. Now, I can pay the interest due, so all you have to do is to send a draft for $900 to one of the banks here, then the holder of those notes will indorse them to you, take the money, and send the notes to you. I will have a lawyer to see that these things are properly done according to the laws of this state.'

"(12) The interest payments were made by Mrs. Baxter with money earned by her prior to her second husband's death but during most of which time he was in the asylum.

"(13) Some evidence was offered by defendants of improvements made on the premises by defendant Mrs. Baxter with funds earned by her during her marriage with Dr. Baxter. The evidence was silent as to the character of such improvements and as to the sum of money so expended. Nor was it shown that such improvements have permanently enhanced the value of the premises. No claim was urged on account of such improvements except the defense that therefore the foreclosure should be denied.

"Conclusions of Law.

"(1) I conclude that the real estate purchased by Mrs. Baxter from Bridges became her separate property, and that the subsequent payment of interest on the vendor's lien notes, with money earned by her during her marriage with Dr. Baxter, did not change the character of such title. In the absence of proof of contrary intention, even if such interest money was community funds (on which point a conclusion is not expressed), it should be presumed that such interest payments were intended as a gift from the community to the separate estate.

"Furthermore, since the community was receiving the benefit of the use and occupancy of the property as a home, it is doubtful if the mere payment of interest out of community funds should be held to constitute any contribution to the property so as to charge it with any character of claim in behalf of the community.

"(2) I conclude that since the purchase by Mrs. Baxter was made with her husband's consent and approval, his failure to join her in executing the notes did not invalidate the lien securing the notes.

"(3) That, irrespective of Dr. J. W. Baxter's consent to the purchase, his failure to join in the execution of the notes rendered them, at most, voidable and not void. And Mrs. Baxter, after the disability of coverture was removed by Dr. Baxter's death, having elected to hold the property, cannot by a plea of coverture defeat the lien by which the notes were secured.

"(4) That at the time the notes were executed, Dr. J. W. Baxter was de jure a non compos mentis, and it is thought that, notwithstanding the fact, of his temporarily lucid mental condition, the wife may have the right to make such purchase without his joining therein.

"But, however that may be, the husband being insane, in law and in fact, at the time of the negotiations for and purchase of the notes by plaintiff, Mrs. Baxter's representations to him at those times were such as to estop her from effectually asserting the plea of coverture in bar of the plaintiff's suit for foreclosure.

"Plaintiff does not seek a personal judgment against either of the defendants, and hence his right to such it is not necessary to determine.

"(5) So far as defendant Mrs. Baxter was concerned, the notes were not barred by limitation of November 19, 1913, the time the limitation statute of the 1913 First Called Session became effective (chapter 27, p. 39, Acts 33d Leg. 1st Called Session), and hence the proviso of that statute which attempts to revive remedies then barred is not invoked. The act in question contains other material provisions not included in the act of the regular session of the Thirty-Third Legislature of which it is amendatory; furthermore the act of the called session, exclusive of the proviso first mentioned above, appears to be complete in its scheme and scope. It is therefore to be presumed that the Legislature, at its Called Session of 1913, intended that the balance of the act should stand, even though the proviso in question should be eliminated by the courts as being unconstitutional. The notes, therefore, are not barred by the statutes of limitation.

"(6) While proof of the validity of the title to the notes in the plaintiff's assignors was not direct and full, since proof as to who constitutes the heirs of the original holder was not directly made, yet the proof was prima facie sufficient; no specific denial thereof was made either in the pleadings or in the evidence. Furthermore, defendant Mrs. Baxter should not be heard to question the sufficiency of such proof, in view of her representations on that point to the plaintiff before his purchase of the notes. And in the view which has been taken of the case, the minor defendants have no interest in the property, and for that reason cannot complain in this respect.

"(7) Since the minor defendants have no interest in the property, the statute of limitation is of no avail to them, notwithstanding the fact that even under the act which became effective November 19, 1913, any action which plaintiff may have had against them personally was barred prior to their having been brought into the suit.

"Since it is not shown that the plaintiff knew that the interest payments were made with funds in which the minor defendants had or could claim an interest, it may be doubted whether limitation could begin to run in their favor (as contradistinguished from their mother's privileges in that respect), until such

time as he may have been advised, or may have been charged with notice of their claims.

"And, in any event, their rights, if any were acquired by them, were not such as could have cut off plaintiff's right to foreclosure of his lien. It would seem that, even if they acquired an interest by reason of the fact that community (if it was such) money was used in making interest payments, such equitable interest could not bar the foreclosure of the lien against their codefendant Mrs. Baxter; nor against them in the absence of the assertion of a claim by them in the proceeds of the sale of the premises under foreclosure. No such claim was asserted, nor was it justified by the proof; hence it is proper to decree foreclosure against them, as well as against their codefendant, Mrs. Baxter."

### Opinion.

It is apparent that the two main questions to be decided here are: First, did the trial court correctly overrule the defense of coverture; and, second, were the indebtedness and vendor's lien barred by limitation?

[1-3] As to the first question, we agree with the trial court that the land became the separate property of Mrs. Baxter, upon the purchase by her, and that the failure of her husband to join in the execution of the notes did not invalidate the lien securing the same. At most, the notes were voidable and not void, by reason of the failure of Dr. Baxter to join in their execution. As stated by the trial judge, Mrs. Baxter, after the removal of the disability of coverture by the death of Dr. Baxter, having elected to hold the property, cannot by a plea of coverture defeat the lien by which the notes were secured.

As said by Mr. Justice Brown, in Pitts v. Elsler, 87 Tex., at page 348, 28 S. W. 518:

"In this state the right of a married woman to acquire and hold property, real and personal, either by gift, devise, descent, or purchase, is as absolute as that of her husband. She may with his consent mortgage her real estate to secure his debts, or she might give her personal property to him or to any other person. If she contract to buy on a credit and execute a note for the price, she may or may not, as she may elect, proceed with the contract, and the person contracting with her cannot refuse to carry out the agreement because she is a married woman. If she elect to abandon the contract, she cannot be compelled to pay what she has promised, but she must return what she has received."

In this case Mrs. Baxter did not offer to restore the property which she had received, and we think she could not defeat the vendor's lien without offering to return the property.

[4] We also sustain the trial court's conclusion that, under the peculiar facts of this case, Mrs. Baxter was estopped from asserting coverture to defeat the vendor's lien, because of her representations to appellee inducing his purchase of the notes. Under the principles recognized by our Supreme Court in Buchanan v. Burnett, 102 Tex. 492, 119 S. W. 1141, 132 Am. St. Rep. 900, we think it cannot be doubted that Mrs. Baxter was estopped to insist upon the defense of coverture.

[5] Upon the second question, we are of the opinion that the indebtedness secured by the vendor's lien was not barred by limitation when the suit was brought, because of the operation of the provisions of chapter 27, Acts of the Thirty-Third Legislature, First Called Session (Vernon's Sayles' Ann. Civ. St. 1914, art. 5695). Conceding the unconstitutionality of the proviso in that act which sought to revive remedies already barred, there is another provision which is thought to be constitutional, and which had the effect of extending the notes in controversy and the vendor's lien securing the same, so as to prevent the bar of limitation.

We have considered all the assignments of error of the appellant, Mrs. Baxter, including those raising other questions, and have concluded that none of them can be sustained. They are therefore all overruled.

[6] The minor defendants who have appealed have raised an additional question. It is urged for them that the proof showed that certain community funds were used in the payment of interest on the notes, and by way of improvements on the property. Conceding this, we do not think they could prevent the foreclosure of the vendor's lien. At most, they were entitled to an accounting, and perhaps a lien, but subordinate to the rights of appellee to have his vendor's lien foreclosed. This relief they did not ask, but have relied upon these alleged facts as a defense to prevent a foreclosure at all, and the trial court properly concluded that the defense was not available. All other assignments of these appellants have been considered, and are overruled.

We think substantial justice and equity has been reached in the case, that no reversible error has been shown, and that the judgment should be affirmed, which is accordingly done.

Affirmed.