**FARMERS' STATE BANK OF ATLANTA v. WELCH et al.   (No. 3137.)**

(Court of Civil Appeals of Texas. Texarkana. Dec. 25, 1925. Rehearing Denied Jan. 7, 1926.)

**1. Homestead ⬲57½ — Homestead of merchant held, as matter of law, to be in town where he resided.**

Where defendant, engaged in general merchandising, owned house and lot in town, and resided there, and owned farm three miles in country, which was not used for support of family, but largely rented to tenants, his homestead, as matter of law, was in town.

**2. Vendor and purchaser ⬲276—Payee held estopped from setting up fact that vendor's lien notes, given in sham sale, were worthless.**

Where vendor's lien notes, given in sham sale, had been taken with knowledge by bank as security for indebtedness, and payee arranged with another bank to take up such indebtedness and hold notes as security, he was estopped from saying notes were worthless.

Appeal from District Court, Hopkins County; C. O. James, Special Judge.

Suit by the Farmers' State Bank of Atlanta against J. L. Welch and, another. From the judgment, plaintiff appeals. Modified and rendered.

H. A. O'Neal, of Atlanta, and Dial & Brim, of Sulphur Springs, for appellant.

Ramey & Davidson, of Sulphur Springs, for appellees.

HODGES, J.  This suit was filed by the appellant, Farmers' State Bank of Atlanta, against J. L. Welch and J. G. Mullins, to recover the principal, interest, and attorney's fees due on certain promissory notes described in the petition.

In the first count of the plaintiff's petition three notes for $1,000 each are described and set out as the basis of recovery. These were executed by Mullins on the 3d day of July, 1919, payable to Welch or his order, and due in one, two, and three years from date. They bore interest from date at the rate of 10 per cent. per annum, and also provided for the payment of the usual attorney's fees in case of default. The notes recited that they were given as part of the purchase price of a tract of 50 acres of land situated in Hopkins county and fully described in the petition. A vendor's lien was reserved to secure their payment. The plaintiff alleged that these notes were indorsed by Welch for a valuable consideration and delivered to the First State Bank of Picton, from whom the appellant later acquired them by assignment, and for which it paid a valuable consideration. The plaintiff asked for judgment on these notes against both Welch and Mullins, and for a

foreclosure of the vendor's lien against the land.

In the second count of the plaintiff's petition a recovery is sought upon a note made by Welch for the sum of $3,000 and payable to the order of plaintiff. It is alleged that the three vendor's lien notes above described were deposited by Welch as collateral security for the payment of the last-mentioned note.

In its prayer for relief the plaintiff asked for judgment for its debt against both Mullins and Welch, and for a foreclosure of the lien on the land. Mullins made no answer. Welch pleaded, in substance, that the land was his homestead; that the vendor's lien notes were executed by Mullins in pursuance of a sham sale of the land; that the entire transaction was a fraudulent scheme to obtain apparent collateral security for a debt which he and Mullins then owed the First State Bank of Picton, and to enable the latter to satisfy the bank examiner as to the security held for the payment of the indebtedness of Welch and Mullins; that the fact that the land was his homestead was well known to the bank officials, and that it was understood between him and Mullins and those officials that the notes were not to be binding or enforceable, but were to be held simply for the purpose of deceiving the bank examiner regarding the security for the indebtedness above mentioned. He also alleged that the appellant, the Farmers' State Bank of Atlanta, took the notes after the indebtedness for which they were held had been satisfied and after some of them had matured, and with actual notice of the fact that the land was his homestead, and that the transaction out of which the notes grew was a sham and a device to impose on the bank examiner in the manner above stated, and that the notes were not to be collected or the lien enforced.

The testimony adduced upon the trial showed that Welch owned and occupied a house and lot in Picton, a village containing two banks and several stores and business houses, and that the land in controversy was situated about 2½ or 3 miles in the country from Picton; that it belonged to Mrs. Welch, and had never been occupied by Welch and his family as a place of residence.

The court instructed the jury that Welch was not entitled to claim a homestead both in Picton and in the country. He then submitted the following issues:

(1) Was the land in controversy the homestead of Welch and his wife? To which the jury answered, "Yes."

(2) Did Welch, before the delivery of the vendor's lien notes against the land to the Farmers' State Bank of Atlanta, represent that those notes were valid and subsisting obligations representing a part of the purchase price of the 50 acres of land, and that

Welch had assumed the payment of the same? To this the jury answered, "He did not."

(3) Did the Farmers' State Bank of Atlanta purchase those notes from the First State Bank of Picton relying upon the representations made by Welch that the land was worth more than the notes and that the notes were valid and subsisting obligations and a lien against the land? To this the jury answered, "No."

(4) Did Welch at the time the notes were acquired by the First State Bank of Picton, or prior thereto, represent to or have an agreement with the First State Bank of Picton, or an understanding that the notes were void and of no force and effect? To which the jury answered, "Yes."

(5) Did Welch at the time the notes were acquired by the Farmers' State Bank of Atlanta, or prior thereto, represent to or have with that bank an understanding that the notes were void and of no force and effect? To which the jury answered, "No."

Upon those findings a judgment was rendered in favor of the appellant against both Welch and Mullins for the entire amount of the debt sued for, but the court refused to foreclose the lien on the land. He further awarded a judgment in favor of Welch canceling the apparent lien and removing the cloud thereby cast upon the title to the property.

[1] The instruction to the jury that Welch could not claim both the house and lot in Picton and the land in the country as his homestead implies a finding by the court that Picton was a "town," as that term is used in the constitutional provision relating to homestead exemptions. That conclusion of fact was fully warranted by the testimony, and is not complained of in this appeal. The state of the evidence was such that the court might not only have concluded that Picton was a "town" where an urban homestead might be located, but he should have concluded, as a matter of law, that the homestead of Welch was in the town of Picton. According to the testimony of Welch he owned a house and lot in Picton, and he was residing there with his family at the time this transaction with Mullins occurred. He had never resided on the land in the country, and there is nothing in the evidence that showed a use of that property for the support of the family. Welch was engaged in general merchandising, and did not in person work the farm, but rented most of it to tenants. During the proper season he and Mullins bought and shipped fruit. There is no basis in any of the evidence for a finding that the 50 acres was a homestead; hence that finding of the jury should have been set aside by the court as unsupported.

It is impossible for one to examine the record in this case without a feeling of surprise at the conclusions which the jury reached on some of the controverted issues of fact. Welch testified that the transaction with Mullins, out of which the sham sale of the land grew, was for the purpose of procuring collateral security for an additional loan from the Picton bank. At that time he and Mullins were indebted to the bank for prior loans, and the cashier objected to making further advances unless additional security were given, stating as a reason that the bank examiner had objected to that amount of unsecured loans. It is true Welch testified that the incumbrance of the land originated in a scheme to which the cashier was a party and that the latter knew that the land was the family homestead at the time. He also testified that he had an understanding with the cashier that the notes were never to be paid, but were to be used solely to satisfy the bank examiner and avoid trouble. While the cashier testified to the contrary, and his testimony is supported by other circumstances, the jury found in favor of Welch upon that issue.

[2] If this were a suit by the Picton bank to enforce the collection of those notes, that finding might be sufficient to defeat a recovery without reference to the homestead claim. But the action is by the Farmers' State Bank of Atlanta, to whom the notes were assigned as security for another debt. Counsel for the appellee contend that, since two of the notes were overdue at the time the appellant bank acquired them, it took them subject to all defenses that might have been pleaded against the Picton bank. That would be true if the Atlanta bank had acquired the notes in the usual and ordinary course of business, and without any solicitation or representations by Welch.

The evidence shows that some time during the year 1921 Welch decided to move to Atlanta. He then owed the Picton bank approximately $4,500, and that bank still held those three vendor's lien notes. Before moving to Atlanta he called on the cashier of the Atlanta bank, and made arrangement whereby the latter was to take up and carry $4,500 of his indebtedness to the Picton bank. He told the cashier of the existence of the vendor's lien notes, and agreed that they might be held as security for the new loan. It is true he testified that he, at the same time, informed the cashier of the Atlanta bank that the notes were worthless, but the jury found that issue of fact against Welch. The cashier testified that Welch was a stranger to him; that, when Welch asked for the loan to take up the indebtedness to the Picton bank, he mentioned these notes and agreed that they might be held as security for the loan solicited. Welch gave his personal note for $3,000 to the Atlanta bank, and that note was later renewed, and the renewal note is the one sued on in this action. Under a rigid cross-examination, Welch, with apparent reluctance, admitted:

"Yes; I agreed with them that these three vendor's lien notes should be used as collateral security."

It is true that in other parts of his testimony he apparently contradicted that statement; but, when his testimony is considered in its entirety, there is no escape from the conclusion that this statement is the admission of a truth wrung from an unwilling witness.

Under those circumstances Welch should not now be heard to say that the security he pledged as an inducement for the loan he obtained was worthless. It was not necessary to create an estoppel that Welch should affirmatively represent that the notes were good and founded upon a valuable consideration. It is sufficient if the cashier took them at the instance of Welch and upon what they appeared to be. There was nothing in them to indicate that they were irregular, or were otherwise than what their face would imply.

Our conclusion upon the whole record is: (1) That it conclusively appears that the 50 acres of land was not subject to the homestead claim; and (2) that the vendor's lien notes were taken by the appellant bank at the instance of Welch and as security for the debt which is the basis of this suit, and that Welch cannot, in this controversy, defeat the lien by the facts upon which he relies.

The court, therefore, erred in refusing to set aside the finding of the jury on the issue of homestead and render judgment in favor of the appellant for a foreclosure of its lien on the land. The court also erred in entering judgment in favor of Welch canceling the lien as a cloud upon his title.

The judgment of the trial court will therefore be modified accordingly, and judgment here rendered ordering a foreclosure of the lien evidenced by the three vendor's lien notes executed by Mullins to Welch.

### On Motion for Rehearing.

Appellee, in his motion for a rehearing, attacks the conclusions upon which this case was disposed of upon several grounds. He asserts that the testimony is such that the jury might have found that the 50-acre tract of land situated 2½ or 3 miles from Picton was a part of the homestead of Welch. He asserts that Welch did not testify that he lived in Picton, but lived at Picton. Assuming that there is an essential legal distinction, when applied to the facts of this case, between the words "in" and "at," we quote as follows from the testimony of Welch on cross-examination:

"Yes; I made these notes July 3, 1919. At that time I owned a dwelling lot in Picton. If I didn't live on it at the time, I lived on it right soon afterwards. I moved my house on that along that year. I think my house was on it at that time. I would say I was living on it at that time."

That, we think, sufficiently answers the argument upon the homestead issue.

Appellee also insists that this court had no right to disregard the findings of the jury and render a judgment for the appellant, because that could not have been done by the trial court.

The case was submitted on special issues. The first question required the jury to answer whether or not the 50-acre tract was the homestead of Welch. In reply to that the jury found that it was. The state of the evidence was such, we think, that upon the application made by the appellant in its motion for a new trial the court should have set that finding aside as unsupported by the evidence.

The answers to questions 2, 3, and 4 might have been disregarded by the court as of no legal importance upon the controlling issues, or at least as not requiring a judgment in favor of Welch. The answer to question 5 was favorable to the appellant.

It is further contended that under the findings of the jury and the testimony of Welch the notes did not evidence a valid and enforceable contract, and because of that fact they could not, under any subsequent dealings, have become vitalized so as to become enforceable. If that proposition be true, then all sham sales which are made by the owners of property in order to get into circulation vendor's lien notes would be unenforceable solely because they were void as between the original parties and others with notice. Repeated decisions of our courts hold that such notes, when passed into the hands of innocent purchasers or holders for value, may be enforced. Our holding in this case is that, however invalid the notes may have been in the hands of Welch or the Picton bank, they were valid and enforceable when taken over by the Atlanta bank at the instance of Welch as security for money advanced to take up his indebtedness to the Picton bank. Any other rule of law would result in a miscarriage of justice.

The motion for rehearing is overruled.