## GARRETT et al. v. KATZ. (No. 10451.)

Court of Civil Appeals of Texas. Dallas.
Nov. 27, 1929.

Rehearing Denied Jan. 13, 1930. Second Motion
for Rehearing Denied Feb. 10, 1930.

Crate Dalton and Paul L. Raish, both of Dallas, for appellants.

J. L. Lipscomb and Cockrell, McBride, O'Donnell & Hamilton, all of Dallas, for appellee.

LOONEY, J. R. L. Garrett and wife, Flora Garrett, and Crate Dalton, their attorney, to whom they conveyed, subsequent to the transaction here involved, half interest in the property in controversy, sued Jenkins-Cobb & Massey Lumber Company, a corporation, M. Katz, and J. R. Cobb, to recover title to a parcel of land 46x108 feet, off the rear ends of lots 10 and 11, block 6, Ross addition to Dallas; to cancel a certain deed dated February 23, 1926, executed by Garrett and wife, conveying said lot to the lumber company; and to cancel certain notes and trust deeds held by Katz and Cobb, claimed by them to constitute a valid mechanic's lien on the land and the eight-room duplex residence located thereon. Plaintiffs alleged that the land was the homestead of Garrett and wife; that the conveyance by them to the lumber company, while in form a deed, was in fact a mortgage; that the notes held by Katz and Cobb arose from a pretended mechanic's lien contract executed by.Garrett and wife, as owners, and John Schmitt, as contractor, purporting to fix a mechanic's lien for improvements to be erected on the premises, while in truth the contract was simulated and intended as an incumbrance upon the homestead for money to be used for other purposes.

The defendants all answered the suit. Katz answered by the general issue, and specially pleaded that the land in question was never in fact owned by Garrett and wife; that, while the record title stood in their names, the land belonged to the lumber company and was held in trust for it, therefore as Garrett and wife owned no interest in the land, they could have no homestead interest therein; that it was intended by all parties that the contract signed by Garrett and wife and Schmitt should fix a valid lien for $5,000 on the property; that the note executed would be sold to an innocent purchaser; and further that, at the time he purchased the interest of $4,000 in the note, he had neither knowledge or notice of the facts above stated. Further pleading, Katz set up the mechanic's lien contract of date October 23, 1924, between Garrett and wife and John Schmitt, and alleged that on August 6, 1925, Schmitt, in consideration of $4,000 cash paid by said defendant, conveyed to him a $4,000 interest in the note, together with the lien securing same. The remaining $1,000 interest in the note, it seems, was assigned to defendant Cobb. Katz alleged that his $4,000 interest in the note and lien was renewed and extended by Garrett and wife executing their five promissory notes, four in the sum of $250 each and one for $3,000, due, respectively, one, two, three, four, and five years after date, all payable to said defendant, with interest, attorney fees, and providing for accelerated maturity in case of default, which was alleged; that the notes were secured by a trust deed that recognized and extended

the mechanic's lien for their security. He specially pleaded that he was an innocent purchaser of the $4,000 interest in the note; that he was induced to purchase same on the sworn representations of Garrett and wife to the effect that the debt constituted a valid mechanic's lien on the premises; that they made said representations for the purpose of inducing him to make such purchase; that he relied upon said representations, and was innocent of any knowledge to the contrary; therefore prayed that plaintiffs be estopped to assert the invalidity of the mechanic's lien.

Dallas Title & Guaranty Company, by leave of court, intervened, adopted the pleadings of Katz, and alleged that it was induced to issue its mortgage policy in his favor upon the record title and upon the representations of Garrett and wife, made in the form of their sworn statement, that by reason thereof intervener had become obligated to Katz in the sum of $4,000, and pleaded estoppel against appellants from asserting against it or against Katz the claim set forth in their petition.

On the findings of the jury and the facts ascertained by the court, judgment was rendered in favor of plaintiffs against the lumber company, canceling the deed as prayed for, and against defendant Cobb canceling the mechanic's lien contract as to the $1,000 interest in the original alleged mechanic's lien note and the renewals and trust deed executed by Garrett and wife to secure same, and for recovery of the land as against said defendants. The court also rendered judgment in favor of Katz that plaintiffs take nothing on their plea against him for cancellation of the mechanic's lien contract, that he recover from Garrett and wife the amount due on the renewal notes, interest, and attorney's fees, with foreclosure of the mechanic's lien on the land for the amount of the judgment, less attorney's fees, and that plaintiffs be estopped, as to Katz and the Dallas Title & Guaranty Company, to assert the invalidity of the mechanic's lien.

This appeal is prosecuted by plaintiffs from the judgment against them in favor of Katz.

The facts are undisputed to the effect that the land in question was, at and prior to the inception of the purported mechanic's lien contract between Garrett and wife and John Schmitt, their homestead; that the residence thereon had been recently converted from a six-room house into an eight-room duplex, and was free from incumbrance. Garrett and the lumber company, to whom he was indebted for labor and material used in improving the duplex residence and in constructing an apartment house on an adjoining lot, conceived the idea of having a pretended mechanic's lien contract executed, and used Schmitt, a carpenter who had formerly worked for Garrett, as the pretended contractor to whom the $5,000 note was made

payable. Mrs. Garrett was cognizant of these facts when she joined in the execution of the lien contract.

The material question for our decision is this, Were plaintiffs, under the facts and circumstances, estopped, to set up, in defense of the claim of Katz for foreclosure, the invalidity of the mechanic's lien contract? ·

In response to a special issue the jury found that Katz was without knowledge of any vice in the transaction at the time he accepted and paid $4,000.00 for an interest in the note, and, in addition to this finding by the jury, the court found as follows: "* * * And it further appearing to the court that on or about August 12, 1925, the defendant, M. Katz, purchased $4,000.00 of the amount due upon said mechanic's lien note * * * and that the said M. Katz had no notice or knowledge of the true facts concerning and surrounding the execution of said note and contract, and purchased same and advanced the sum of $4,000.00 thereon without knowledge or notice of the fact that the material and labor provided for in said contract had not been purchased and performed in accordance therewith * * * that * * * Katz in doing so relied upon the representations of the plaintiffs, R. L. Garrett and wife, Flora Garrett * * * to the effect that the improvements provided for in the mechanic's lien contract had been completed to the entire satisfaction of the plaintiffs, Garrett; that the said Schmitt (ostensible contractor) had carried out all of the terms of his contract; that said contract was executed and acknowledged by said plaintiffs Garrett prior to the placing of any material or the performing of any labor upon said real property, and that all bills for labor and material had been fully paid, and that in so relying neither of said defendants (the plural includes Dallas Title & Guaranty Company, not involved in this appeal) had any knowledge or notice that said representations were false, which they were, and had no knowledge or notice of any facts sufficient to put them (plural again) upon notice of the falsity of said representations * * * and that all of said plaintiffs are estopped to set up any invalidity of the lien securing the aforesaid notes held by the defendant Katz * * * and are likewise estopped to set up as a defense the failure of consideration of said notes or any other vice therein."

These findings, by jury and court, are sustained by evidence, and, in our opinion, justified the judgment in favor of Katz, unless propositions urged by plaintiffs, which we will now discuss, can be maintained.

Plaintiffs make the broad contention that the simulated mechanic's lien contract, void under the provisions of the Constitution (section 50, art. 16), cannot be enforced even in the hands of an innocent purchaser, or given any validity under the doctrine of estoppel; in other words, that the sound public policy that inheres in the homestead protective provisions of the law should not be made to yield to the exigencies of private bargaining.

It is apparent, from the generous homestead provisions of our laws and the liberality manifested by courts in adjudicated cases, that homesteads are favorites of the law; yet we think it will be found that the doctrine broadly contended for by plaintiffs is against the law as settled in this state.

In a number of cases, where simulated or fictitious transactions, giving rise to ostensible liens on homesteads, were involved, our appellate courts have repeatedly held that bona fide purchasers of such liens should be protected. See Hurt v. Cooper, 63 Tex. 362; Love v. Breedlove, 75 Tex. 649, 13 S. W. 222; Eylar v. Eylar, 60 Tex. 315, 320; Graves v. Kinney, 95 Tex. 210, 66 S. W. 295; Harrison v. First National Bank (Tex. Civ. App.) 224 S. W. 269.

The doctrine is also well settled that, where a void lien emerges from an illegal transaction, such as the one involved in this controversy, the maker will be estopped to set up its invalidity where he has induced a stranger to become its purchaser on representations that asserted its validity. See Buchanan v. Burnett, 102 Tex. 492, 119 S. W. 1141, 132 Am. St. Rep. 900; Cain v. Bonner (Tex. Civ. App.) 149 S. W. 702; Melcher v. Higbee (Tex. Civ. App.) 165 S. W. 478, 481; Moore v. Beakley (Tex. Com. App.) 215 S. W. 957; Baxter v. Baxter (Tex. Civ. App.) 225 S. W. 204; Farmers' State Bank v. Welch (Tex. Civ. App.) 279 S. W. 481; Bernstein v. Hibbs (Tex. Civ. App.) 284 S. W. 234; Barron v. Theophilakos (Tex. Civ. App.) 13 S.W. (2d) 739.

The findings of the jury and court are to the effect that, at the time Katz purchased the $4,000 interest in the mechanic's lien contract, he was without knowledge of any vice therein; that he relied upon representations of Garrett and wife to the effect that the improvements provided for in the mechanic's lien contract had been completed to their entire satisfaction and that Schmitt, the contractor, had carried out all the terms of the contract, that same had been executed and acknowledged by Garrett and wife prior to the placing of any material or the performing of any labor upon the real estate, and that all bills for labor and materials had been fully paid. These findings, in our judgment, fully justified the trial court in holding that plaintiffs were estopped to urge the invalidity of the mechanic's lien contract.

Another doctrine also recognized by the courts of this state is that, where a party by silence allows another to contract to his injury on the belief that certain facts exist. which can be contradicted by the reticent party, the latter will be estopped to dispute

39

the facts against the person whom he has thus assisted in deceiving. Burnett v. Atteberry, 105 Tex. 119–130, 145 S. W. 582, 587. On this phase of the case, the court made the following findings: "And it further appearing to the court that in addition to the fraudulent representations made by the plaintiffs, Garrett, the said plaintiffs purposely suppressed all information by which the defendant M. Katz and the defendant Dallas Title & Guaranty Company might have ascertained the true facts with relation to the lien securing said notes and that whatever right, title or interest the plaintiff Crate Dalton has in said property, he acquired with full notice and knowledge of the aforesaid conduct of his co-plaintiffs, and he holds no higher rights as to the defendants Katz and Dallas Title & Guaranty Company, than do his co-plaintiffs, and that all of said plaintiffs are estopped to set up any invalidity of the lien securing the aforesaid notes held by the defendant Katz and insured by the defendant Dallas Title & Guaranty Company, and are likewise estopped to set up as a defense the failure of consideration of said notes or any other vice therein."

In support of the doctrine of estoppel by silence, our Supreme Court, in Burnett v. Atteberry, supra, quoted at length from standard law-writers and leading cases the following:

"An estoppel may arise as effectually from silence, where it is a duty to speak, as from words spoken. One may be induced to act to his injury on account of the silence of one interested in a transaction, and when such course of action is permitted with the knowledge of the interested party or induced by silence or tacit acquiescence, the doctrine of estoppel may be invoked. The rule is tersely but accurately stated by Mr. Bigelow in the following sentence: 'A representation in the nature of a negative of one's rights may, as we have seen, arise from pure silence; and from pure but misleading silence with knowledge, or passive conduct joined with a duty to speak, an estoppel will arise.' Bigelow on Estoppel, p. 564. See cases cited in footnote 3.

"Again, the same author, page 565, quoting from Lord Denman in Pickard v. Sears [6 A. & E. 469, 2 N. & P. 488] says: 'A party who negligently or culpably stands by and allows another to contract on the faith and understanding of a fact which he can contradict cannot afterwards dispute that fact in an action against the person whom he has himself assisted in deceiving.'

"As said by Chancellor Kent: 'There is no principle better established in this court, nor one founded on more solid considerations of equity and public utility, than that which declares that if one man knowingly, though he does it tacitly, by looking on, suffers another to purchase and expend money on land under an erroneous opinion of title, without making

known his claim, he shall not afterwards be permitted to exercise his legal right against such person. It would be an act of fraud and injustice, and his conscience is bound by this equitable estoppel.' Wendell v. Van Rensselaer, 1 Johns. Ch. (N. Y.) 353.

"No less forceful is the principle of estoppel as here contended for laid down by Justice Swayne in the following language: 'The appellee insists that the record discloses a case of estoppel in pais, and that the appellant is thereby barred from maintaining the claim which he seeks to enforce in this litigation. The principle is an important one in the administration of the law. It not infrequently gives triumph to right and justice where nothing else could save them from defeat. It proceeds upon the ground that he who has been silent as to his alleged rights when he ought in good faith to have spoken, shall not be heard * * * when he ought to be silent. Bank v. Lee, 13 Pet. 107, 10 L. Ed. 81.' Morgan v. Chicago & Amr. Co., 96 U. S. 716, 24 L. Ed. 743.

" 'Estoppel by silence arises where a person, who by force of circumstances is under a duty to another to speak, refrains from doing so and thereby leads the other to believe in the existence of a state of facts in reliance upon which he acts to his prejudice.' 16 Cyc. 680, footnote 10.

"The doctrine laid down in the foregoing authorities is undoubtedly approved by our own court. Love v. Barber, 17 Tex. 318: Ragsdale v. Gohlke, 36 Tex. 287; Bynum v. Preston, 69 Tex. 288, 6 S. W. 428, 5 Am. St. Rep. 49; Waggoner v. Dodson, 96 Tex. 423, 73 S. W. 517."

The court's finding to the effect that Garrett and wife by silence permitted Katz to invest money in the obligation in suit was sustained by evidence, and, in our opinion, furnished an additional ground for the decree that estopped plaintiffs from asserting the invalidity of the mechanic's lien.

Plaintiffs insist, however, that, as Katz purchased an interest in the note after its maturity, he held the lien subject to all defenses that could have been urged by them if the suit had been brought by the original payee.

■ As before shown, the mechanic's lien contract and the note for $5,000 were in fact executed in August, 1925, but were given a fictitious dating, as of October 23, 1924, and the note by its terms matured 60 days from that date. Under the findings of the court and jury, the transaction, so far as Katz was concerned, was real; therefore he became a purchaser several months after the maturity of the note, hence, under a well-established rule of law, would have been visited with notice of the invalidity of the mechanic's lien (Hill v. Jones Lbr. Co. [Tex. Civ. App.] 178 S. W. 28; Seay v. Fennell, 15 Tex. Civ. App. 261, 39 S. W. 181), but for the silence of Garrett and wife at a time when they should have spoken, and the false representa-

tions made when they did speak that induced Katz to invest money to his injury. See Farmers' State Bank v. Welch (Tex. Civ. App.) 279 S. W. 481; Bernstein v. Hibbs (Tex. Civ. App.) 284 S. W. 234.

Plaintiffs make the further contention that John Schmitt's signature to the transfer of the note was forged, and that Katz failed to prove title to any interest therein. On this issue Katz alleged: "* * * That at the same time (when mechanic's lien contract was executed) the said Garrett and wife did execute to the said Schmidt their negotiable promissory note for $5,000.00, payable sixty days from its date; that to wit, August 6, 1925, the said John Schmitt, for value received, to wit, $4,000.00 cash in hand paid, did convey unto this defendant $4,000.00 interest in said $5,000.00 note, and all liens against said property to secure same, which instrument was filed for record on August 12, 1925, with the county clerk of Dallas County after having been duly acknowledged by the said John Schmitt."

Plaintiffs failed to deny under oath the genuineness of the alleged written assignment from Schmitt to Katz, as required by article 2010, subd. 9, Rev. St. 1925, and failed to file with the papers of the cause an affidavit to the effect that they had good cause to believe and did believe that the alleged assignment from Schmitt to Katz was forged. Article 573, Rev. St. 1925, reads: "When suit is brought by an assignee or indorsee of a written instrument, the assignment or indorsement thereof shall be held as fully proved, unless the defendant shall file with the papers in the cause an affidavit stating that he has good cause to believe, and does believe that such assignment or indorsement is forged."

Plaintiffs, having failed to raise the issue of forgery, by a sworn plea, cannot now contend that the assignment by Schmitt to Katz was a forgery.

Aside, however, from this consideration, it appears from the evidence that Schmitt's name to the papers was not in fact forged. As before shown, he had no interest in the matter—was a mere figurehead arbitrarily selected by Garrett to sign the instruments. When the papers were presented, Schmitt happened to be at work on top of a garage, and, under these circumstances, requested a Mr. Lon Crosby, who was standing on the ground just below, to sign the papers for him.

Inspection of the judgment reveals the fact that the court not only decreed foreclosure of the mechanic's lien, as against plaintiffs, but rendered personal judgment for the full amount of the debt against both Garrett and his wife, Flora Garrett. Mrs. Garrett has not complained of the personal judgment against her, but the same is error apparent and fundamental, which we cannot overlook, as the facts did not authorize personal judgment against her for debt.

We have carefully considered all assignments and propositions urged by plaintiffs, but find no error, save in the respect just mentioned; therefore the judgment of the court below is reformed as indicated, and, as reformed, is affirmed.

Reformed and affirmed.

## On Motion for Rehearing.

In their motion for rehearing, appellants vigorously and with unusual assurance contend that this and the trial court erred in holding them estopped to urge the invalidity of the mechanic's lien contract as against Katz; their contention being that the issue was neither presented by pleading nor supported by proof.

As to the status of the pleadings, after alleging at length facts showing the simulated character of the mechanic's lien contract, appellants made this allegation: "Plaintiffs further show, that with full knowledge of the facts above alleged, and being finally apprized of these facts by plaintiff, R. L. Garrett, the defendant M. Katz purchased $4,000.00 of the said purported mechanic's lien, and that Jenkins, Cobb & Massey Lumber Company, or J. S. Cobb, own $1,000.00 of the purported mechanic's lien, the said purported mechanic's lien having been divided into two notes, the note held by the said Katz being designated as a first lien and the note held by Jenkins, Cobb & Massey Lumber Company, or J. S. Cobb, being designated as a second lien, and the said Jenkins, Cobb & Massey Lumber Company and M. Katz now assert their interest in the said property as evidenced by the said purported lien and the notes above described. That both of the said notes and the lien above set out are wholly void, for the reasons hereinabove set out; that defendant Jenkins, Cobb & Massey Lumber Company perpetrated the said fraud and that the defendant Katz took the same with full knowledge of all of the facts as herein set out."

In their second supplemental petition, touching this issue, appellants made the following allegations: "Plaintiffs specially deny that they are estopped to deny the validity of defendant's purported lien for the reason that, as set out in their First Amended Original Petition, they put all of the defendants upon full notice of all the facts, and particularly that it was their homestead, that the purported lien was created after the improvements were finished, that the improvements did not amount to over $1,000.00 or $1,200.00, and that plaintiffs paid for them when they were completed, all of which notice was given the defendant Katz, and all of which was known to Jenkins, Cobb & Massey Lumber Company and Cobb, the said Katz being apprized of all of such facts after the Stewart Title Company declined to guarantee the title and before he finally purchased the said note and paid therefor, and that plaintiffs are not

estopped, therefore to deny the validity of said lien, are not estopped to deny that defendant Katz is an innocent purchaser without notice of the above alleged facts. In this connection, plaintiffs reassert that all of these facts above set out were true, that defendant Katz had full knowledge of all of them and was advised before he purchased the property that the affidavit which plaintiff and his wife were signing, and complained of in defendant's answer, was being made at defendant's instance and request in order that said lien might be consummated and that defendant Katz, if any fraud was perpetrated upon Dallas Title & Guaranty Company, perpetrated such fraud upon them for the sole purpose of securing said mortgage policy, but these plaintiffs had fully in all things advised the defendant of all the facts set out in plaintiff's First Amended Original Petition."

The truth of these allegations were put in issue by the general denial of Katz, and besides he specially pleaded that. "when he purchased said $4,000 of said $5,000 note and took said notes in renewal thereof, did so in good faith, fully acting upon the record title to said property as shown by the deed to the said R. L. Garrett and by said mechanic's lien contract from the said R. L. Garrett and Flora Garrett, and fully relying upon all recitals of such mechanic's lien contract, and particularly relying upon the recitals and statements as contained in said mechanic's lien contract that same had been executed and delivered before any labor and material for the erection of said improvements had been furnished, and particularly also relying upon said written sworn statement as aforesaid, of date August 10th and 11th, 1925, of the said R. L. Garrett and Flora Garrett, and John Schmitt, and not only so, but this defendant, in order to further secure his rights in the matter, did then and there, to wit at the time he acquired said $4,000 interest in said note, and at the time that he took said new notes in renewal thereof, obtain from Dallas Title & Guaranty Company of Dallas, Texas, its mortgagee policy guaranteeing that this defendant's said notes were secured by first lien against the aforesaid property; that he relied upon said mortgage policy in purchasing $4,000 of said mechanic's lien note. That plaintiffs have at all times had notice and knowledge of the facts in this paragraph set forth and are estopped in law and in equity from asserting as against this defendant the claims as attempted to be set forth in this suit."

We think the different phases of the issue of estoppel, discussed and decided by us, were clearly presented by these pleadings, and that estoppel was satisfactorily established by evidence.

The record discloses that, after the execution of the simulated mechanic's lien contract, application was made to defendant Katz to purchase the lien note of $5,000, and, with the view of satisfying himself as to the value of the property and the propriety of making such investment, he visited the premises and was shown through the house, Garrett and wife both assisted in exhibiting the property to him, and at this time, although they knew the simulated nature of the mechanic's lien contract, and Katz's purpose in visiting and inspecting the premises, they failed utterly to disclose to him a single fact that would have put him upon inquiry touching the validity of the mechanic's lien.

The testimony of appellants shows further that they knew Katz would not make the investment unless the Dallas Title & Guaranty Company issue to him a title policy. On this point Mrs. Garrett testified that Katz told them to take the papers to the Dallas Title & Guaranty Company; that he wanted them to insure the title; that she went with her husband when the papers were carried to the Dallas Title Company; that the papers were signed at the office of the Dallas Title & Guaranty Company—that is, the notes and trust deed sued upon (which represented the $4,000 interest purchased by Katz in the original $5,000 notes), also the affidavit made by appellants at the time the papers were executed. She said: "I knew before I signed those papers, and when I signed them, that they were necessary in order to have the Title Company issue a certificate; it is necessary to sign papers to make any kind of a deal, and I supposed it was necessary to have those papers signed before the Title Company would approve the title and Mr. Katz pass the money. I knew that when I signed this."

Referring to the affidavit dated August 10, 1925, made by appellants as an inducement to secure the issuance of the title policy and the consummation of the loan, she stated that "this affidavit does not state the truth." Among other things, the affidavit recites that "we, R. L. Garrett and wife, Flora Garrett, do hereby declare under oath that the improvements made for us by John Schmitt under a certain mechanic's lien contract between ourselves and the said John Schmitt, dated the 23rd day of October, 1924 * * * on the following described property (describing same) have been completed to our entire satisfaction, and the said John Schmitt has fully completed and carried out all of the terms of said contract. This statement is made by us for the purpose of negotiating a loan of $4,000.00 with M. Katz; that said John Schmitt has fully complied with said contract, and for the further purpose of inducing Dallas Title & Guaranty Company to issue its mortgage policy on the renewal of the above note. Affiants further state, that the above mentioned contract was executed by them prior to the placing of any material or the performing of any labor upon said premises and to our best knowledge and belief all bills for labor and material have been fully paid."

Mr. John C. Cox, attorney for Dallas Title & Guaranty Company, who examined the title in question and closed the Katz loan, testified in part that he dictated the lien contract, the new notes and affidavit executed by appellants in connection with closing the loan; that the papers were explained by him to the parties, were executed by them in his presence; that he took their acknowledgments and administered the oaths to the affidavit; and that appellants assured him the facts set forth in the affidavit were true. It seems that Katz had delivered to Cox a certified check for $4,000, and Cox, after the execution of these documents by appellants, closed the loan, believing the recitals therein to be true. As stated in the original opinion, the jury found that Katz was without knowledge of any vice in the transaction at the time he accepted and paid $4,000 for an interest in the note.

On re-examination, after careful consideration, we see no reason to alter or change our original decision, and therefore the motion for rehearing is overruled.

Overruled.

### On Second Motion for Rehearing.

Appellants were granted leave to file a second motion for rehearing, now under consideration.

In the opinion filed on their original motion for rehearing, we had occasion to say that " * * * they (Garretts) failed utterly to disclose to him (Katz) a single fact that would have put him upon inquiry touching the validity of the mechanic's lien." Appellants challenge the correctness of this conclusion, on the ground that, the same is not supported by the record; that is to say, by neither pleading nor proof. In reaching this conclusion, we followed, as we believe we should have done, the findings of the trial court heretofore fully set out in our original opinion, and, as appears in both opinions heretofore filed, the issue of estoppel by silence was both substantially pleaded and proven; hence it will serve no useful purpose to go over that ground again.

However, it may be conceded, for the sake of the discussion, that "estoppel by silence" was neither sufficiently pleaded nor adequately proven, and yet the result so far as appellants are concerned will be the same.

The trial court found and adjudicated, under adequate pleadings sufficiently sustained by evidence, that appellants made untrue statements under oath, asserting the existence of facts that would, if true, have sustained the validity of the mechanic's lien contract, that Katz relied upon these representations and, without notice of any vice in the transaction, made the investment and parted with his money. Estoppel on this ground alone was sufficient to sustain the judgment against the defendant, irrespective of whether estoppel by silence was either pleaded or proven.

Appellants raise the further question that the court erred in holding that necessary parties to Katz's cross-action were not before the court; the point made is that Schmitt, the maker of the simulated mechanic's lien note, was not a party to the suit.

The evidence conclusively showed that Schmitt had no interest in the note, or in the mechanic's lien contract; hence it was not necessary that he should have been made a party to the cross-action of Katz. Appellants sued for the cancellation of the mechanic's lien contract executed by them, on the idea that, the same was simulated, unreal, and for that reason void. The evidence showed that Schmitt was a mere figurehead, selected by appellants and the lumber company to execute the mechanic's lien contract as ostensible contractor for the purpose of floating and negotiating the note, an interest in which was subsequently sold to Katz. It was alleged by Katz in his cross-action that Schmitt, for value received, to wit $4,000 cash in hand paid, transferred to him a $4,000 interest in the $5,000 note, and the lien against said property to secure same, and this $4,000 interest was afterwards recognized by appellants in the execution of the notes payable to Katz, sued upon in this case. After a further careful reconsideration of all the questions raised in the motions for rehearing, the same are deemed without merit, and are in all things overruled.

Overruled.