### JUDGE et ux. v. SHABOUB.
### No. 2297.

Court of Civil Appeals of Texas. Beaumont.
Feb. 17, 1933.

Rehearing Denied March 8, 1933.

David L. Broadus, of Beaumont, for appellants.

W. R. Blain and F. S. Jones, both of Beaumont, for appellee.

WALKER, Chief Justice.

On the 10th day of March, 1932, in the court below, upon trial to the court without a jury, appellee, Deeb E. Shaboub, recovered judgment against appellant, John Judge, for the sum of $3,732.36, with foreclosure of certain mechanic's, materialman's, contractor's, and laborer's liens, and one deed of trust lien, dated January 12, 1928, against lots Nos. 1 and 2 of the Carver addition to the city of Beaumont, as to both John Judge and his wife, Lula Judge. Appellee purchased all the notes and liens in controversy on the 27th day of September, 1929. On that date the deed of trust lien principal, with interest at 10 per cent. per annum, amounted to $1,007.88. The notes, representing this amount, also called for 10 per cent. additional as attorney's fees. In their deed of trust to secure the amount just stated, appellants made the following statement: "The parties of the first part hereby declare that the property hereinbefore mentioned and conveyed to said party of the second part, forms no part of any property by them owned, used or claimed as exempt from forced sale under the laws of the. State of Texas, and disclaim and renounce all and every claim thereto under any such law or laws, and hereby designate the following property to-wit: Lot No. Two of the Carver Addition to the city of Beaumont, Jefferson County, Texas, according to the map or plat thereto, and filed in the office of Clerk of the County Court of Jefferson County, Texas, as their homestead and as constituting all the property of similar nature to that herein conveyed, owned, used, or claimed by them as exempt under said laws."

This statement was false. Lots Nos. 1 and 2 had been the residence homestead of appellants since 1915 and lot No. 2, with part of lot No. 1, was their residence homestead continuously from 1915 up to the time this case was tried in the lower court. In 1925 appellants erected on one end of lot No. 1 a filling station and garage, which they have occupied and operated continuously since 1925 and were so occupying and operating it when this case was tried. The sign "Judge's Garage and Filling Station" was on the front of the building at all times from the date of its erection. One of the mechanic's and materialman's liens involved in this litigation was executed by appellants to Jeff Compton and dated the 1st day of February, 1929. The improvements covered by this contract were described as follows: "To furnish all labor, work and material of whatever kind or character, and to build and erect, construct and complete in a workmanlike manner for the parties of the first part, on or before ten days after the date of this contract, according to plans and specifications, a correct copy of which plans and specifications being fully identified by the signatures of the parties to this contract subscribed thereto is hereby referred to and made a part hereto for all purposes without being hereto attached or copied herein. The improvements herein contracted to be made shall be reroofing and reconstruction of a roof of a dwelling house in which the parties of the first part are living as shown by said plans and specifications, said buildings, when completed and reconstructed, to be free and clear of all liens, demands and claims except the liens which are now held by S. Feinberg on the identical property to-wit: Lots Nos. One and Two in Block One, in and of the Carver Addition to the City of Beaumont."

The undisputed proof was to the effect that no part of the improvements covered by this contract was ever made to the property located on lots Nos. 1 and 2. The residence house, occupied by appellants, on lot No. 2, being the only residence house on either lots Nos. 1 or 2, was originally erected in 1915 at the cost of about $650, and had not been re-roofed since the date of the original erection. On the date appellee purchased these notes, the roof of the residence building was in a bad state of repair, and on that date the building was occupied by appellants as their home. The Jeff Compton lien amounted to $1,027.22, principal and interest at 10 per cent., on the 27th day of September, 1929, the day it was purchased by appellee. The note,

evidencing this lien, also called for 10 per cent. additional as attorney's fees.

On the 27th day of September, 1929, all the notes and liens in controversy herein were owned by T. J. Voorhies. Appellants had defaulted in the payment of the notes, and Voorhies was demanding payment and threatening suit and foreclosure. Appellants made a personal request of appellee to take up these notes and save the property from foreclosure. They represented to him that the property was worth $6,000, and they further represented to him that all the liens against the property were good, valid, and subsisting liens, and that they owed the full amount claimed by Voorhies against the property. Appellee, having money to loan, went out and inspected the property as to its value, and was satisfied with the security. He found the building on lot No. 2 occupied by appellants as their residence and the filling station occupied by John Judge as his place of business. Appellants made no affirmative statement to appellee as to the history of the liens against their property, other than that they were good, valid, and subsisting liens. An inspection of the residence by appellee revealed to him the fact that no new roof had been put on the building, and that none of the improvements called for in the Compton lien contract had been made to the property. Appellants made no representation to appellee as to the occupancy by them of lot No. 1 as a business homestead on the date of the execution of the deed of trust in 1928. Appellee had no actual knowledge as to the facts of the occupancy of this property, prior to the date he personally inspected it. He informed appellants that he was satisfied with the value of the security, and would take up the notes and liens held by Voorhies on condition that his attorney approve their legality. Appellants knew appellee's attorney personally, and called upon him in connection with the transaction, and represented to him that all the liens were valid and subsisting liens. The attorney inspected the abstract to the property, and, on the representations made to him by appellants as to the legality of the liens, approved their title. On the facts stated, appellee purchased from Voorhies all the notes held by him against the property, paying him on the 27th of September, 1929, the full amount due thereon in the sum of $2,913.40. Appellants and appellee then entered into a new contract, extending the payment of the notes, and appellants executed to appellee a new deed of trust on lots Nos. 1 and 2 to secure all the notes. Appellants defaulted in their payments, whereupon appellee instituted suit against them for the amount due, with interest and attorney's fees, with a prayer for foreclosure of the liens as set out above. Appellants answered, denying the amount of the indebtedness claimed by appellee, and pleaded specially that the property

was their homestead when the liens were executed, and therefore void. Appellee pleaded by way of estoppel the facts as we have stated them above. In appealing from the judgment of the lower court, appellants complain only of the foreclosure of the Jeff Compton materialman's and mechanic's lien and of the foreclosure of the deed of trust lien of date January 12, 1928.

## Opinion.

██ We sustain appellants' assignments against the Jeff Compton lien. As no improvements were made under this lien, and as it was a simulated transaction, it was absolutely void from the date of its execution. Though appellants represented to appellee that the lien was a valid and subsisting lien, and he purchased it on this representation, the physical facts, when he inspected the property, put him upon notice that these representations were false. The improvements called for a new roof and only a new roof. Appellee's personal inspection showed him that the roof on the residence was old and could not have been put on the building on the date of the contract, which was only about six months prior to the date he purchased the lien. It is the law that one cannot say that he has been deceived by statements which he was bound to know were false. Spears' Law of Marital Rights in Texas, p. 343.

██ We overrule the assignments, complaining of the foreclosure of the deed of trust lien. While appellants were occupying the garage and filling station on the 27th day of September, 1929, the date appellee inspected the property and purchased this lien from Voorhies, yet they gave no notice to appellee that they were occupying this lot as their residence or business homestead on the 12th day of January, 1928, the date of the execution of the deed of trust lien. As against the representations in the deed of trust and the statement by appellants that the lien was valid, no presumption arose from the homestead occupancy on the 27th day of September, 1929, that it was so occupied on January 12, 1928. As to whether or not the facts in evidence, as summarized above, were sufficient to put appellee upon notice of the character of the occupancy of this lot, on January 12, 1928, was a question of fact for the trial court, and, on this issue, he found in favor of appellee.

Appellants represented to appellee that this deed of trust lien was a good, valid, and subsisting lien, and, by this representation, induced him to purchase it from Voorhies; at the time they induced him to purchase this lien, on representations as to its validity, they failed to tell him that lot No. 1 was their business homestead on the date of the execution of the deed of trust; the record contains

no fact, sufficient as a matter of law, to visit appellee with actual or constructive notice that lot No. 1 was appellants' business homestead on the date of the execution of the deed of trust. We think these facts support the conclusion of the trial court that appellants were estopped to assert their claim of homestead against the deed of trust lien. In Burnett v. Atteberry, 105 Tex. 119, 145 S. W. 582, 587, our Supreme Court quoted with approval the rule that "he who has been silent as to his alleged rights when he ought in good faith to have spoken, shall not be heard * * * when he ought to be silent." In Garrett v. Katz, 23 S.W.(2d) 436, 438, Judge Looney, speaking for the Dallas Court of Civil Appeals, said: "The doctrine is also well settled that, where a void lien emerges from an illegal transaction, such as the one involved in this controversy, the maker will be estopped to set up its invalidity where he has induced a stranger to become its purchaser on representations that asserted its validity. See Buchanan v. Burnett, 102 Tex. 492, 119 S. W. 1141, 132 Am. St. Rep. 900; Cain v. Bonner (Tex. Civ. App.) 149 S. W. 702; Melcher v. Higbee (Tex. Civ. App.) 165 S. W. 478, 481; Moore v. Beakley (Tex. Com. App.) 215 S. W. 957; Baxter v. Baxter (Tex. Civ. App.) 225 S. W. 204; Farmers' State Bank v. Welch (Tex. Civ. App.) 279 S. W. 481; Bernstein v. Hibbs (Tex. Civ. App.) 284 S. W. 234; Barron v. Theophilakos (Tex. Civ. App.) 13 S.W.(2d) 739."

Appellants do not complain of the personal judgment against John Judge.

From what we have said it follows that, in so far as the judgment of the lower court foreclosed the Jeff Compton mechanic's and materialman's lien, it must be reversed and, on this item, rendered in favor of appellants. In all other respects the judgment of the lower court is affirmed.

Reformed and affirmed.