**NIXON et al. v. HIRSCHI.**

No. 1778—7280.

Commission of Appeals of Texas, Section B.

Oct. 18, 1939.

90

John M. Martin and Mathis & Caldwell, all of Wichita Falls, for plaintiffs in error.

T. R. Boone, Kearby Peery, E. T. Duff, and E. L. Fulton, all of Wichita Falls, for defendant in error.

TAYLOR, Commissioner.

The alleged grounds of this suit filed by Mrs. Rose Lisle Nixon and her husband, J. J. Nixon, plaintiffs in error here, are set forth in a petition containing two counts, one in trespass to try title, and the other seeking cancellation of two purported deeds of trust executed by Mrs. Nixon and her then husband, S. H. Howell, and for removal of cloud. The suit was filed the same day the property in question (701 Travis Street, Wichita Falls, Texas) was bought in by John Hirschi, defendant in error, at a sale under deed of trust held by him. The basic question arises upon the claim of homestead urged by plaintiffs as the grounds of invalidity of the sale under the trust-deed executed by Mrs. Nixon and her then husband on February 26, 1929, to secure a loan of $2,500 made to her on that date by Hirschi.

The trial court rendered judgment in favor of Mrs. Nixon for title and possession of the property subject however to foreclosure of a tax lien in favor of Hirschi for $317 and for cancellation of the deeds of trust and removal of cloud. The Court of Civil Appeals reversed the judgment of the trial court and rendered judgment in favor of Hirschi. 103 S.W.2d 833.

The deed of trust given to secure the Hirschi loan was the second given by Mrs. Nixon (then Howell) and her husband to procure loans secured by the premises in controversy. The first was executed on September 18, 1928, to secure a monthly payment loan of $1,500 made to Mrs. Nixon by Standard Savings & Loan Association about five months before the Hirschi loan was made. The deed of trust given by Mrs. Nixon and her then husband to Hirs-

chi recites that the property in question was not their homestead and had never been, and that their homestead was located at 506 North Travis Street on other and distinct property; also that they understood the recited representation was being made for the purpose of securing the loan. Simultaneously with making the deed of trust to the loan association Mrs. Nixon and her husband had filed for record a homestead designation, designating what was known as the Tarter-Clark subdivision property as their homestead. Neither property designated as the home of the Howells was ever occupied by them.

Mr. Hirschi in making the loan took up a draft for the amount due on the $1,500 loan and paid to Mrs. Nixon (then Howell) the difference between such amount plus certain taxes and loan expenses, and the amount of his loan.

The jury found that at the time of executing the deed of trust to the loan association, as well as at the time of executing the Hirschi deed of trust, the property was the homestead of Mrs. Nixon and her husband Howell; and that at both such times it was being used and occupied by them as such. Numerous other findings were made by the jury, but they are immaterial in the light of those above stated, and the testimony of Mr. Hirschi, which will later be referred to.

The Nixons assert the invalidity of both purported liens, claiming that on September 18, 1928, the date of the deed of trust given the loan association, and prior thereto and since that time, the premises in controversy was the homestead of plaintiffs, and that Mrs. Nixon was at that time "using, occupying, controlling and claiming" the property as her homestead and had since then continuously so claimed and occupied it, and that for this reason the purported lien of the loan association was void and never legally effective; and that the subrogation lien claimed by defendant (Hirschi), by virtue of his having paid off that loan out of the amount loaned her, could not be enforced because of the invalidity of the purported lien given to secure its payment.

It should be stated in connection with the claim of subrogation that while Hirschi took up the loan association's draft for the amount due on its monthly payment loan, such payment was in truth and in fact paid by Mrs. Nixon. The substance behind the shadow in that transaction was the payment by Mrs. Nixon of the amount

due the loan association out of the money loaned to her by Hirschi.

The Court of Civil Appeals did not base its rendition of judgment in favor of Mr. Hirschi upon his claim of subrogation, but upon the view that the borrowers were estopped to assert their homestead rights, stating that the case is within the rule applied by that court in First Texas Joint Stock Land Bank v. Chapman et ux., Tex. Civ.App., 48 S.W.2d 651, writ dismissed, and in Guaranty Bond State Bank v. Kelley, Tex.Com.App., 13 S.W.2d 69. Notation was made in granting the writ expressing doubt as to the correctness of the opinion on the question of estoppel. Upon further consideration we have concluded that the court erred in its decision and that the judgment of the trial court was correct.

■ The doctrine of subrogation in the face of the findings of the jury stated above, and the testimony of Mr. Hirschi himself, has no application to the facts of this case. Texas Land & Loan Co. v. Blalock, 76 Tex. 85, 13 S.W. 12; Toler et al. v. Fertitta, Tex.Com.App., 67 S.W.2d 229. In the case first cited this Court, speaking through Chief Justice Stayton, says [76 Tex. 85, 13 S.W. 13]:

"The constitution declares that 'no mortgage, trust-deed, or other lien on the homestead shall ever be valid, except for the purchase money therefor, or improvements made thereon, as hereinbefore provided, whether such mortgage or trust-deed or other lien shall have been created by the husband alone, or together with his wife.' Article 16, § 50. *There is no doubt that the application for the loan, and the recitals and declarations in the trust-deed, that the property was not homestead, went as far as words could go to assure the lender that it might safely lend its money without fear that lien would be defeated by the existence of homestead rights.* * *

"The fact of actual possession and use, as the home of the family, was one against which the lender could not shut its eyes; and this fact, coupled with the interest held by the borrower in the land, made the property homestead in fact and in law, on which the constitution declares no lien, such as claimed in this case, can exist. Every person dealing with land must take notice of an actual, open, and exclusive possession; and when this, concurring with interest in the possessor, makes it homestead, the lender stands charged with no-

tice of that fact, it matters not what declarations to the contrary the borrower may make. It has been held (as in Eylar v. Eylar, supra) that one remaining in possession of land, after having executed and permitted to be placed on record an absolute conveyance, could not rely upon his possession as notice of a secret agreement that the absolute conveyance, as between the parties to it, was only intended as a mortgage, and thus defeat the right of a subsequent innocent purchaser. That, however, is not this case. Here nothing was hidden. Possession was open, certain, and in character in no respect ambiguous. It was such as gave homestead right, and the lender cannot be heard to say that it did not know it. The constitution forbidding the fixing on the homestead of liens other than such as are thereby expressly permitted, no estoppel can arise in favor of a lender, who has attempted to secure a lien on homestead in actual use and possession of the family, based on declarations of the husband and wife, made orally or in writing, contrary to the fact. To hold otherwise would practically abrogate the constitution. *If property be homestead in fact and law, lenders must understand that liens cannot be fixed upon it, and that declarations of husband and wife to the contrary, however made, must not be relied upon.* They must further understand that no designation of homestead, contrary to the fact, will enable parties to evade the law and incumber homesteads with liens forbidden by the constitution. [Equitable] Mortgage Co. v. Norton, 71 Tex. 683, 10 S.W. 301; Pellat v. Decker, 72 Tex. [578], 581, 10 S.W. 696; Kempner v. Comer, 73 Tex. [196], 203, 11 S.W. 194." (Italics and parenthetical interpolation ours.)

■ The foregoing excerpt, in the light of the findings of the jury stated above, supported as they are by the evidence, is sufficient authority for the proposition that both deeds of trust executed by the borrowers were absolutely void.

■ In the case last cited Commissioner Critz, speaking for this Court, says [67 S.W.2d 230]: "On the other hand, it is equally the settled law of this state that any attempt to create a lien or mortgage on a homestead to secure a debt, regardless of the method or form used, except for the things provided by the Constitution, is an utter nullity, and never becomes effective to any extent. * * * As said

**92**

by Judge Robertson, speaking for the Supreme Court in Inge v. Cain, supra [65 Tex. 75], 'what cannot "ever be valid," is never valid, and what is never valid, is always void.' "

It is apparent from the law as stated in the foregoing excerpt that Mr. Hirschi could have no right of subrogation by virtue of loaning Mrs. Nixon the money with which to discharge the monthly loan made by the loan association on her homestead. His right, if any, to prevail would necessarily depend, under the facts, upon an estoppel rather than the right of subrogation.

The cases relied upon by the Court of Civil Appeals are distinguishable upon the facts stated in each respectively from the facts of the present case and are not controlling here. In the Kelley case estoppel was sustained against the borrowers upon the doctrine of Eylar v. Eylar, 60 Tex. 315, to the effect that the purchaser of the homestead, after being charged with notice through possession, *had exercised due diligence as to prosecuting the inquiry raised by such possession by ascertaining at the time of the transaction* that those later claiming notice of homestead by virtue of possession had prior to the time of the transaction, executed an absolute conveyance of the property. In the other case relied upon by the Court of Civil Appeals, the Chapman case, supra, estoppel was sustained against the borrowers on the ground that the Houston bank at the time it advanced Chapman the money to take up an outstanding obligation to a bank at Decatur *exercised* due diligence in prosecuting the inquiry raised by the possession held by the borrowers some four years prior to the transactions involved. In neither case was a lien upon the homestead involved held to be valid, but recovery was allowed in each upon the ground that the homestead claimant was estopped under the facts to assert such claim; and in neither did it appear that the party seeking to avoid a homestead claim relied solely upon the recitations of the abstract record relating to the homestead.

■ In the present case no reason is apparent why the homestead use being made of the property could not have been ascertained by diligent inquiry. Mr. Hirschi appears to have relied solely upon the homestead designations made by the Howells and their representation in his deed of trust that the property being given as security was not their homestead. The jury found that a reasonably prudent person would not have believed that either of the properties designated as a homestead by the Howells actually constituted such homestead, and that Mr. Hirschi did not believe that their homestead was in the Tarter-Clark subdivision.

■ The present case is not one in which, as in Parrish v. Hawes, 95 Tex. 185, 66 S.W. 209, and Carstens v. Landrum, Tex.Com.App., 17 S.W.2d 803, 804, "the tangible facts respecting two places are such that the homestead character will attach to either, to the exclusion of the other, according as the husband and wife intend," and in which "a declaration by the spouses * * * in this respect may estop them from disputing the truth of the declaration." In this case only the premises in controversy had been occupied by Mrs. Nixon and her husband and Mr. Hirschi appears to have failed to make specific inquiry seeking to reconcile the possession of the premises at the time his loan was made, with the record declarations of other property as homestead. See in this connection Hughes et ux v. Wruble et al., 131 Tex. 444, 116 S.W.2d 368 and Gibraltar Sav. & Bldg. Ass'n v. Collier et al., 118 S.W.2d 639, .writ refused. Hirschi himself testified that the abstract showed the dedication of the homestead on property other than that given as security for his loan, and that he did not "go to anything except the records." The mere record representations made by the plaintiffs as to homestead, do *not, without more, estop them* from asserting their homestead rights under the constitution. Texas Land & Loan Co. v. Blaylock, supra. The Court of Civil Appeals erred in applying the doctrine of estoppel.

Counsel for defendant in error in concluding their written argument filed in this Court urged that "the reasoning in the Blalock case is unsound" and that "since it has been clearly disclosed by the judicial record of the Courts of Texas that the decision in the Blalock case has not served the purpose that Judge Stayton thought it would serve, it no longer has any place in the jurisprudence of this State, being unsound both in reason and in policy," and the sooner overruled the better.

■ The fact that the holding of this Court reflected in the above excerpt from the Blalock case has for many years been *a rule of property* in this State, is sufficient

reason for declining to overrule it. Furthermore the Court shares the view expressed by Chief Justice Stayton that holding otherwise would abrogate that provision of the Constitution, Vernon's Ann.St. Const. art. 16, § 50, declaring that no mortgage, trust-deed, or other lien on the homestead shall ever be valid except for the purposes therein stated, by ultimately rendering such provision ineffective.

The judgment of the Court of Civil Appeals reversing the trial court's judgment and rendering judgment in favor of defendant in error is set aside and that of the trial court is affirmed.

Opinion adopted by the Supreme Court.