**LINCOLN et ux. v. BENNETT.**

No. 12810.

Court of Civil Appeals of Texas. Dallas.

Nov. 25, 1939.

Rehearing Denied Jan. 6, 1940.

Goggans & Ritchie, John B. Stigall, Jr., and Nathaniel Jacks, all of Dallas, for appellants.

Lively, Dougherty & Alexander, of Dallas, for appellee.

LOONEY, Justice.

James A. Lincoln and wife, Blanche Horne Lincoln (appellants), filed this suit against Dale E. Bennett (appellee) and Hiram F. Lively, seeking the cancellation of three certain deeds of trust, in which Bennett was beneficiary, and for an injunction to prevent Lively, trustee in each of the deeds of trust, from selling lands conveyed as security for certain notes; two of the deeds of trust conveyed the identical property situated on San Jacinto Street in the City of Dallas, to secure two notes, one dated July 5, 1926, for $8,000, and the other dated March 22, 1928, for $2,000. The other deed of trust conveyed a lot on Harwood Street in the City of Dallas, to secure a note for $7,000, dated May 31, 1927.

Lively filed a disclaimer showing that he had no interest in the litigation, other than as trustee in the deeds of trust. Appellee Bennett answered and, in a cross action, sought judgment for the amount due upon the three notes and for foreclosure upon the lands conveyed in trust to secure same.

(Lively was discharged on his disclaimer, and judgment was rendered in favor of appellee on his cross action for the amount due on the $8,000 and $2,000 notes, with foreclosure on the San Jacinto Street property. The correctness of the judgment in the respects just mentioned is not challenged, hence no further notice will be given these phases of the case.)

The other deed of trust, conveying the lot on Harwood Street, as before stated, was to secure the payment of a note for $7,000, and the only question presented on this appeal is, as to appellee's right to foreclose the lien of the trust deed on said property, as against appellants' homestead claim. Both in his answer to appellants' suit and in his cross action against them, seeking judgment for debt and foreclosure, appellee Bennett alleged that, the note for $7,000 and the deed of trust given upon the Harwood Street property to secure same, were executed for the purpose of renewing and extending a note dated May 25, 1922, in the principal sum of $7,000, payable on May 25, 1927, to G. H. Schoellkopf, which was taken up, renewed and extended by appellee at the special instance and request of appellants, and was duly transferred to appellee by the trustees of the Schoellkopf estate (the payee having died), in consideration of the payment of the $7,000 note held by the estate against appellants. Appellee further alleged that, at the time of the Schoellkopf transaction, and as a part thereof, appellants, on May 22, 1922, duly executed and acknowledged a homestead designation, designating as their homestead certain other property then owned by them, located on Lindsley Avenue in the City of Dallas, declaring that, the designated property was then held, used and occupied by them as their homestead, and that their homestead claim did not embrace any other lands; that the designation was duly recorded in the deed records of Dallas County, which, together with an abstract of title showing the rec-

ord of the trust deed, were furnished by appellants to Lively, who, in all the transactions here involved, acted for and on behalf of Bennett, were examined and considered by him before accepting the transfer of the Schoellkopf note and consummating the transaction; that at the time, and as an inducement, James A. Lincoln represented to Lively that the Schoellkopf note was secured by a valid subsisting first lien on the Harwood Street property; that same was not appellants' homestead and was not used and occupied by them as such on May 25, 1922, when the Schoellkopf note and deed of trust were executed by appellants; that, at the time of the purchase and extension of the Schoellkopf note, neither Bennett nor Lively knew or had any notice that, on May 25, 1922, appellants were claiming, using or occupying the Harwood Street property as their homestead, nor of the falsity of the statements made by Lincoln, nor of the falsity of the statements contained in the designation; but, believing and relying upon the truth of said statements by Lincoln, and upon the truth of the facts revealed by the record, that is, the trust deed and the statements recited in the homestead designation, Lively (acting for appellee) was induced to purchase the Schoellkopf note, to renew and extend same, and accept the Harwood Street property as security for the note given in lieu of the Schoellkopf note; also alleged that, appellants fraudulently concealed from Lively, and failed to disclose the true facts respecting the homestead status in May, 1922, of the Harwood Street property, with the intention of inducing him to purchase the Schoellkopf note and trust deed securing same, and to renew and extend the indebtedness, but for such fraudulent concealment, Lively (acting for appellee Bennett) would not have purchased the Schoellkopf note and accepted from appellants the renewal note and deed of trust on the Harwood Street property; that Hiram F. Lively (acting for and on behalf of appellee), relying upon and believing the statements of James A. Lincoln, and relying upon and believing the facts revealed by the record and the statements contained in the homestead designation, and because of appellants' concealment and failure to disclose the material facts, that is, that said property was their homestead and was used and occupied by them as such at the time of the inception of the Schoellkopf loan, was persuaded and induced to purchase said original note and to pay $7,000 therefor, and accept appellants' note and deed of trust in renewal and extension of the Schoellkopf indebtedness, therefore, appellants are estopped to assert the invalidity of the original lien.

The cause was submitted to a jury on special issues. It is not disputed that, at the time the Schoellkopf loan was consummated in May, 1922, the Harwood Street property was the homestead of appellants, and that, the statements contained in their homestead designation to the contrary were untrue, and that all other statements or implications contradictory of the idea of its being their homestead at the time were untrue.

Bearing upon the issue of estoppel, the jury made the following findings: That, at the instance of James A. Lincoln, Judge Lively, acting for and on behalf of Mr. Bennett, purchased the Schoellkopf note, paying therefor $7,000 in cash, and at that time, did not know that, in May, 1922, when the Schoellkopf loan was consummated, the Harwood Street property was being used and occupied by appellants as their homestead; that Mr. Lincoln represented to Lively that the Harwood Street property was not appellants' homestead at that time, and, furthermore, that the Schoellkopf note was secured by a valid lien on said property. The jury also found that, such representation was believed by Lively, but that it was not relied upon by him.

In view of the undisputed evidence, we are of opinion that, what the jury meant to say—and that their answer should be so construed—was that, Judge Lively did not rely exclusively upon the statement of Lincoln that the Schoellkopf note was secured by a valid lien on the Harwood Street property. The testimony of Judge Lively, undisputed, is that Lincoln told him the Harwood Street property was not appellants' homestead in May, 1922, when the Schoellkopf loan was made, represented that the Schoellkopf note was a valid lien upon the property, furthermore, that appellants had designated the Lindsley Avenue property as their homestead, which, on investigation, Lively found to be true; that these facts, together with the abstract furnished by Lincoln exhibiting a good and valid lien on the Harwood Street property, securing the Schoellkopf note, altogether were relied upon, and

induced him to take up and extend the note. So, in view of this undisputed testimony, we think the jury intended to say that, in consummating the loan, Judge Lively did not rely exclusively upon Lincoln's representation that, the Schoellkopf note was secured by a valid lien upon the Harwood Street property. No other reasonable interpretation can be given the answer, in view of the undisputed evidence and the other findings.

However that may be, the jury also found that Judge Lively believed and relied upon the facts stated by appellants in their homestead designation (executed as a part of the Schoellkopf transaction), to the effect that, on May 22, 1922, the Lindsley Avenue property was then occupied, held and used by them as their homestead and that their homestead claim did not embrace any other lands, and further found that appellants failed to inform Lively, at or before he purchased and paid for the Schoellkopf note, that the Harwood Street property was used and occupied by them as their homestead when the Schoellkopf loan was made.

■ The parties, respectively, filed motions for judgment on the verdict and, in the alternative, for judgment non obstante veredicto. Appellants' motion was overruled and that of appellee being sustained, judgment was rendered that, appellants take nothing by their suit, that they were estopped to assert the invalidity of the lien on the Harwood Street property as against appellee, that the injunction theretofore granted be dissolved, that appellee recover on his cross action against appellants, the amount, principal, interest and attorneys' fees, due and owing on the note, for foreclosure of the lien on the Harwood Street property, but that the amount for which foreclosure was ordered did not include the attorneys' fees. From this judgment, appellants appealed. Appellants assert that estoppel, as an answer to a claim of homestead, can be urged only in three instances, that is: (1) Where the use and occupancy of the premises are of such nature as to render doubtful its homestead status; (2) where the homestead claimant, in a simulated sale, creates apparently valid vendor's lien notes, and (3) where the claimant induces a lender to extend or renew an apparently valid mechanic's lien obligation, by misrepresenting its validity; contending that, as the transaction here involved does not belong to either of these categories, the plea of estoppel cannot prevail as against appellants' claim of homestead.

We cannot accept appellants' theory. We do not think that, estoppel as an answer to a claim of homestead is limited and circumscribed, as contended by appellants, but that the fraud, misrepresentation or deceit, underlying and forming the basis of a plea of estoppel—Proteus-like—may assume any form or shape that the ingenuity of those practicing deceit or perpetrating fraud may devise.

■ There is nothing in the Constitution or Statutes of the State that prevented appellants from creating a perfectly valid lien on land not occupied, used, or claimed by them as a homestead, and that is precisely the nature of the transaction that was simulated in the instant case, and we think the record evidenced a perfectly valid lien. It was so represented to Judge Lively by Mr. Lincoln. The record disclosed the homestead designation, also the trust deed given by appellants to secure the Schoellkopf note; all this, absent any knowledge or notice to the contrary, reinforced by appellants' silence (when, in good conscience, they should have disclosed to Lively the truth in regard to the homestead status of the property at the time the Schoellkopf loan was negotiated), deceived Lively and induced him to purchase the note from the Schoellkopf estate, and to renew and extend same under the belief that he was acquiring a perfectly valid lien.

In Garrett v. Katz, Tex.Civ.App., 23 S. W.2d 436, 438, writ refused, we had occasion to review the authorities on the subject of estoppel, and, among other things, said that: "The doctrine is also well settled that, where a void lien emerges from an illegal transaction, such as the one involved in this controversy, the maker will be estopped to set up its invalidity where he has induced a stranger to become its purchaser on representations that asserted its validity. See Buchanan v. Burnett, 102 Tex. 492, 119 S.W. 1141, 132 Am. St.Rep. 900; Cain v. Bonner (Tex.Civ. App.) 149 S.W. 702; Melcher v. Higbee (Tex.Civ.App.) 165 S.W. 478, 481; Moore v. Beakley (Tex.Com.App.) 215 S.W. 957; Baxter v. Baxter (Tex.Civ.App.) 225 S. W. 204; Farmers' State Bank v. Welch (Tex.Civ.App.) 279 S.W. 481; Bernstein v. Hibbs (Tex.Civ.App.) 284 S.W. 234; Barron v. Theophilakos (Tex.Civ.App.) 13 S.W.(2d) 739."

In the instant case, the facts and findings of the jury show that, appellants were silent at a time when they should have disclosed to Judge Lively the homestead status of the Harwood Street property at the time the Schoellkopf loan was consummated, as the validity of the lien securing the note appellants were seeking to have appellee take up and extend, depended upon that fact. Silence giving rise to an estoppel, was also discussed in Garrett v. Katz, supra; quoting from an authority, we said: " 'Estoppel by silence arises where a person, who by force of circumstances is under a duty to another to speak, refrains from doing so and thereby leads the other to believe in the existence of a state of facts in reliance upon which he acts to his prejudice.' 16 Cyc. 680, footnote 10. The doctrine laid down in the foregoing authorities is undoubtedly approved by our own court. Love v. Barber, 17 Tex. [312], 318; Ragsdale v. Gohlke, 36 Tex. 287; Bynum v. Preston, 69 Tex. [287], 288, 6 S.W. 428, 5 Am.St. Rep. 49; Waggoner v. Dodson, 96 Tex. [415], 423, 73 S.W. 517."

The facts involved in First Texas Joint Stock Land Bank v. Chapman, Tex.Civ. App., 48 S.W.2d 651, 655, appeal dismissed, were very similar to those involved here. As in the instant case, estoppel was pleaded in answer to a claim of homestead. Disposing of that phase of the case, the court said: "Notwithstanding this emphatic language of the Constitution, it seems now to be the settled law of this state that the homestead of a family may be lost, not on the ground that a conveyance, mortgage, or lien covering the same is valid, but on the ground that the homesteader may estop himself or herself from claiming the benefits of the constitutional provisions." In other cases presenting the question, the holdings were to the same effect. See Judge v. Shaboub, Tex.Civ. App., 57 S.W.2d 613; McMullan v. San Antonio, etc., Bank, Tex.Civ.App., 78 S. W.2d 669, writ refused.

Appellants also contend that, because they were in possession of the Harwood Street property in 1922 (and at all times since), actually using same as their homestead at the time the Schoellkopf loan was consummated (and since), appellee was visited with constructive notice of the homestead status of the property as it existed at that time.

In Texas Land & Loan Co. v. Blalock, 76 Tex. 85, 13 S.W. 12, 13, the Supreme Court announced a doctrine, now well settled in this state, that: "Every person dealing with land must take notice of an actual, open, and exclusive possession; and when this, concurring with interest in the possessor, makes it homestead, the lender stands charged with notice of that fact, it matters not what declarations to the contrary the borrower may make."

Under this doctrine, we think that unquestionably, Mr. Schoellkopf was charged with notice of the homestead status of the property at the time his loan was closed, but do not think it follows that Judge Lively (acting for appellee), five years later, was retroactively visited with such constructive notice. The cases in point are against appellants' contention. The question arose in First Texas Joint Stock Land Bank v. Chapman, supra, and the question of estoppel involved was disposed of in the following language: "The case before us we think distinguishable from that line of cases which hold that the actual possession of the homesteader will, as notice of his rights, control mere representations in a trust deed or other conveyance in writing, declaring the land occupied free of the homestead right. The trust deed executed in favor of appellant bank recited that the land described was Chapman's homestead, and the facts show that he was at that time in actual possession. But a good-faith advancement of money with which to discharge the note and trust deed of October, 1918, conferred upon the Houston bank the right by subrogation to enforce that right, in the absence of notice that the lands involved was occupied as a homestead upon the date of the execution of the 1918 note and deed of trust. * * * So that it was not material to the Houston bank that Chapman and wife were occupying the land in question in July, 1922, the material question being, in order to acquire a valid right by subrogation: Was the land involved the homestead of Chapman and wife in 1918?" While in the discussion the court seemingly mentions the doctrines of subrogation and estoppel as interchangeable, yet it is obvious that, the doctrine of estoppel ruled the decision; the court concluded by saying: "Without further discussion, we conclude that the undisputed evidence shows that the appellees, Chapman and wife, are estopped from claiming the land in controversy was their homestead in October 1918, and the judgment below to this ex-

tent will accordingly be reversed and here rendered in favor of appellant, in harmony with such conclusion."

■■ Similarly, in Judge v. Shaboub, supra [57 S.W.2d 615], the court said: "We overrule the assignments, complaining of the foreclosure of the deed of trust lien. While appellants were occupying the garage and filling station on the 27th day of September, 1929, the date appellee inspected the property and purchased this lien from Voorhies, yet they gave no notice to appellee that they were occupying this lot as their residence or business homestead on the 12th day of January, 1928, the date of the execution of the deed of trust lien. As against the representations in the deed of trust and the statement by appellants that the lien was valid, no presumption arose from the homestead occupancy on the 27th day of September, 1929, that it was so occupied on January 12, 1928." And, to the same effect, see McMullan v. San Antonio, etc., Bank, supra, where the court used the following language [78 S.W.2d 671]: "In the second place, defendant in error was not charged with knowledge of the actual status of the property at a time several years prior to its transaction with plaintiffs in error. In their application to it for a loan to take up the F. B. Collins Investment Company loan made several years prior thereto, the plaintiffs in error stated that this property had never been their homestead. Various and sundry recorded designations covering a period of years verified this statement. That was a declaration that this property was not their homestead at the time the lien was created in favor of F. B. Collins Investment Company. Defendant in error had a right to rely upon this statement of a fact as to a condition existing prior to that time, and plaintiffs in error could not be heard to say that the statement made by them as to this prior existing fact was false. This question is fully discussed and the authorities analyzed in First Texas Joint Stock Land Bank v. Chapman (Tex. Civ.App.) 48 S.W. (2d) 651. No further citation of authorities seems necessary." Appellants also contend that Mrs. Lincoln was not estopped by the acts and representations of her husband. We do not deem it necessary to decide the point, because, in our opinion, Mrs. Lincoln's participation in the proceedings that resulted in the execution of the renewal note and trust deed securing same was sufficient to estop her. However, we know of no reason why Mr. Lincoln, as manager of the community estate, acting alone, could not have estopped his wife by his acts and representations, in obtaining the desired renewal and extension of the Schoellkopf note, based upon the record made by both of them five years before, that is, their homestead designation and trust deed, properly executed, acknowledged and recorded, that together exhibited to Judge Lively a perfectly valid lien upon the Harwood Street lot. Everything Lincoln is alleged to have represented to Judge Lively was in accord with this five-year-old record, and nothing contradicting it was alleged to have been represented by Lincoln, as an inducement to secure the renewal. However, as just stated, we are of opinion that, Mrs. Lincoln's participation in the renewal proceedings was sufficient to estop her, independently of any statement by her husband.

The record fails to disclose that Lively or appellee knew or was visited with constructive notice that, at the time the Schoellkopf loan was consummated, five years before, the Harwood Street property was being occupied and used by appellants as a homestead. However, appellants knew that fact, but each remained silent when, we think, good faith and fair dealing required them to disclose to Lively the truth. Instead, they permitted him to rely upon the record, that is, the sham homestead designation, falsely stating that their homestead was on lot 10, block 20, Eastside (the Lindsley Avenue property), and that "We do hereby declare that the said land is now occupied, held and used by us as our homestead, and that our homestead claim does not embrace other lands". Also, in the deed of trust executed to secure appellee in the payment of the renewal note, referring to the record of the original Schoellkopf deed of trust, appellants agreed that the lien created thereby should remain in full force and effect as security for the renewal note. In effect, we think appellants reaffirmed the integrity and good faith of all that had preceded, same being consistent with the idea that the original deed of trust was a valid, subsisting lien upon the Harwood Street property, and inconsistent with any other theory.

■ Absent knowledge or notice, we do not think Judge Lively was derelict or guilty of negligence, under the circumstances, in failing to inquire beyond the five-year-old record made by appellants,

638

that is, the homestead designation and trust deed that, together, showed conclusively that, the Schoellkopf note was secured by a valid lien on the Harwood Street property. In Guaranty Bond State Bank v. Kelley, 13 S.W.2d 69, 71, (by the Commission), it was contended, as in the instant case, that the wife was not estopped by the conduct of her husband. Disposing of the contention that the wife was not estopped, the court used language that we think is pertinent here; it said: "It was suggested in the arguments that Mrs. Kelley could not be estopped by anything short of an actual fraud affirmatively committed by her, and it is argued that the fraud of the husband, who consummated the deal with the bank, could not be imputed to her. The principles thus contended for are sound; but that fraud which will estop a married woman is not necessarily intentional fraud, but rather any intentional affirmative act of hers which operates as a legal fraud, whether so intended or not, will estop her. Here Mrs. Kelley contributed in an active, affirmative way, to the perpetration of a legal fraud. Her intentions may have been, and no doubt were, perfectly harmless and with no actual purpose to wrong any one. But in law her conduct amounted to an affirmative representation that she and her husband had, in good faith, conveyed the homestead and reserved the lien thus assigned to the bank. To permit her now to plead the invalidity of the transaction would be to permit a legal fraud."

Neither do we think Judge Lively was required to investigate as to the truth or falsity of appellants' statements contained in the homestead designation, executed five years before, but that he could rely upon the records showing homestead designation and trust deed, both presented as inducements to secure the loan to take up and extend the Schoellkopf note. In Eylar v. Eylar, 60 Tex. 315, the Supreme Court, in an opinion by Judge Stayton, held that: "A purchaser from a vendee whose vendor remains in possession is not bound to inquire further as to the title, when he finds on record in the county a deed from such vendor conveying title, properly proved up and registered. To hold otherwise would be to strike at the very foundation of the policy on which registration laws rest. When inquiry as to title is prosecuted to the highest source which affords evidence of the right, there is no obligation to explore inferior and less reliable channels of information. Mullin's Guardian v. Wimberly, 50 Tex. 457, discussed and distinguished. Van Keuren v. Central R. Co. [38 N.J.L. 165] 9 Vroom [165], 167; Groton Savings Bank v. Batty, 30 N.J.Eq. [126], 133; New York Life Ins. Co. v. Cutler, 3 Sandf.Ch. [N.Y., 176] 179; Cook v. Travis, 20 N.Y. 400; Bloomer v. Henderson, 8 Mich. 395 [77 Am.Dec. 453]; Scott v. Gallagher, 14 Serg. & R. [Pa.], 333 [16 Am.Dec. 508], cited and approved." To the same effect, see Buchanan v. Burnett, 102 Tex. 492, 119 S.W. 1141, 132 Am.St.Rep. 900; Moore v. Beakley, 215 S.W. 957, by the Commission; approved by Supreme Court.

Appellants also contend that, since appellee purchased the Schoellkopf note after its maturity, he held the lien subject to all defenses that could have been urged by appellants against Schoellkopf. We do not think so. Although the lien may have been invalid in the hands of Schoellkopf, we think it was enforceable when taken over by appellee, because, not acquired in the usual and ordinary course of business, but as the result of solicitation by Lincoln, and under circumstances that estop appellants to urge, as against appellee, the defense that properly could have been urged against Schoellkopf. The following decisions, we think, sustain the correctness of this proposition: See Farmers' State Bank v. Welch, Tex.Civ. App., 279 S.W. 481; Garrett v. Katz, Tex. Civ.App., 23 S.W.2d 436; Little v. Shields, Tex.Com.App., 63 S.W.2d 363.

We have duly considered all assignments, and failing to find reversible error, the judgment of the trial court is affirmed.

Affirmed.

BOND, Chief Justice (dissenting on rehearing).

The trend of appellate courts of our state, as well as those of other jurisdictions, to abrogate constitutional provisions to meet exigencies by strained construction and by frivolous, technical, and speculative circumvention, has grown to such an alarming extent that it should be checked. The Constitution means today the same as it did when adopted by the people in conventions, or amended by suffrage.

The homestead provisions of our Constitution, Vernon's Ann.St., were adopted to insure a home for a family—wife and children—safe from debts and speculative loans. If property be homestead in fact and law, the Constitution, in effect, says, without equivocation, that lenders must understand that liens cannot be advanced upon it, and that declarations of the husband and wife to the contrary, however made, must not be relied upon. Article 16, Section 50, provides: "The homestead of a family shall be, and is hereby protected from forced sale, for the payment of *all debts* except for the purchase money thereof, or a part of such purchase money, the taxes due thereon, or for work and material used in constructing improvements thereon, and in this last case only when the work and material are contracted for in writing, with the consent of the wife given in the same manner as is required in making a sale and conveyance of the homestead; nor shall the owner, if a married man, sell the homestead without the consent of the wife, given in such manner as may be prescribed by law. *No mortgage, trust deed, or other lien on the homestead shall ever be valid, except for the purchase money therefor, or improvements made thereon, as hereinbefore provided, whether such mortgage, or trust deed, or other lien, shall have been created by the husband alone, or together with his wife; and all pretended sales of the homestead involving any condition of defeasance shall be void.*" (Italicized for emphasis.)

It is not contended here that the debt and deed of trust sought to be enforced against appellants' homestead were creatures of any provision of the Constitution. They were not for purchase money, or any part thereof; they were not for taxes due thereon, or for work and material used in constructing improvements thereon. It is, in effect, conceded, so held by the majority opinion, that the debt and lien sought to be enforced herein were given in renewal and extension of a void lien. Notwithstanding the emphatic language of the Constitution that such lien is void and not susceptible to foreclosure on the homestead, it seems, from the majority opinion, that the homestead of appellants may be lost; not on the ground that the conveyance, mortgage, or lien covering the same is valid, but on the ground that the husband misrepresented the facts; and the wife, in the presence of and under the dominion of the husband, silently stood by and failed to speak when it was her duty to have spoken; thereby the homesteaders are estopped to claim the benefits of the constitutional provision.

It is settled in this state by many decisions, that mere record representations contained in an instrument filed by a wife and her husband, designating certain property as a homestead, without more ado, would not estop the wife and her husband from asserting homestead rights in other property which had, in fact, been used and acquired as a homestead when the instrument was filed; nor, indeed, is the wife, by her silence, mum in the presence of her husband, estopped to claim her constitutional rights, to avoid the loss of her home through foreclosure of a void deed of trust.

The only ground presented in this appeal for the enforcement of appellee's deed of trust is one not found in the Constitution or the statute, but in decisions of courts of equity—denominated "estoppel". An examination of all such decisions discloses that enforcement by estoppel of a lien against a homestead, not coming within the purview of the constitutional exemptions, is in cases which may be grouped into three general classes (First Texas Joint Stock Land Bank v. Chapman, Tex.Civ.App., 48 S.W.2d 651, 655): "(1) When the owners, not actually occupying the property, or so using it that its status is dubious at the time the mortgage is executed, represent that it is not their homestead; (2) when the owners create a lien by entering into a simulated transaction which has all the outward appearance of a valid, unconditional sale, but which is in fact a mortgage; (3) when the owners represent that existing notes are valid mechanic's lien notes for improvements, secured by a mechanic's lien contract properly executed." The reasoning of the courts is founded on facts showing: either a simulated transaction with all the outward appearance of a valid, unconditional sale, but which is in fact a mortgage; or, out of which simulated purchase money (vendor's lien) notes result; or simulated mechanic's lien notes, secured by a mechanic's lien contract, properly executed; or, a set of facts representing two places, where the homestead character may well be attached to either, according as husband and wife intend. In the latter case, however, the two places are so

occupied as to render either capable of being the homestead, and the actual homestead can only be determined by the expressed intention of the parties; and, in the other cases of simulated transactions, the result is to create an exemption allowed by the Constitution. It may well be advanced that, unless the facts show either: (1) That two places are being so used or occupied as a homestead that it is ambiguous as to which one constitutes the true homestead; or (2) a simulated transaction which has all the outward appearances of a valid, unconditional sale, resulting in a purported purchase money note; or (3) simulated mechanic's lien notes, secured by mechanic's lien contract properly executed, that any other form of deed of trust, mortgage, or other lien on the homestead is invalid and incapable of enforcement, being inhibited by the Constitution, whether created by estoppel or otherwise.

In the instant case, the facts do not give rise to an apparent lien consistent with the form of those classes of liens which, by the exceptions in the Constitutional provision, are valid against the homestead. Appellee extended the loan solely on the representations of the husband, that the lien in favor of Schoellkopf (appellee's assignor) was valid and the record representations contained in a filed instrument of homestead designation at another place, contrary to the true facts.

The uncontradicted evidence shows that appellants, together with their daughter, moved into the Harwood Street property (the property in suit) in 1907, used and occupied the same as their homestead continuously, unambiguously and uninterruptedly from that date down to the date of trial. The jury also found that the Harwood Street property had been, since said date, the uninterrupted homestead of appellants. In 1922, appellants applied to Mr. Schoellkopf for a loan of $7,000, expressed a desire to secure the loan by an unsecured personal note, which was refused; and, subsequently devised a scheme, suggested by the lender, to give a deed of trust on their homestead as security for the loan and designate, by written instrument, the property on Lindsley Avenue as their homestead, contrary to the facts. In 1926, Mr. Lincoln secured another loan from appellee Bennett in the sum of $8,000, evidenced by note and deed of trust on property at San Jacinto-Hawkins Streets, in the City of Dallas. The note and deed of trust were prepared by Judge Lively, the trustee named in the deed. That deed of trust, among other provisions usual in such instruments, recites: "Said property is not the homestead of the grantor herein, but our homestead is located at Dallas, Texas, on South Harwood Street and this representation is made as a part of the consideration for the loan herein secured." Thereafter, when the $7,000 Schoellkopf loan became due, Mr. Lincoln approached Judge Lively and requested the loan involved in this controversy, for the sole purpose of taking up the Schoellkopf loan, and, to that end, represented to the Judge that the loan was secured by a valid lien on the property; indeed, a layman's conclusion of law, which, by all rules of reason, the Judge, an able and experienced lawyer, was not justified in accepting as true, especially in the face of the above declaration to the contrary in the $8,000 transaction, of which he and appellee were fully cognizant. It is not disclosed that Judge Lively made any inquiry whatsoever as to the basis for the conclusion that the lien was valid, and none was given. The jury found that Lincoln did not represent to Lively that the South Harwood Street property was not his homestead. In the face of all this, the loan involved in this suit was eventually consummated, appellee paid the money to Schoellkopf for his note and deed of trust, which were duly transferred; and, in turn, the note and deed of trust involved here were executed and delivered in lieu of and in renewal and extension of the original Schoellkopf loan. Thus it will be seen that appellee acquired by the transaction, no better security than his predecessor had.

It is settled law that persons dealing with land must take notice of an actual, open, and exclusive possession concurrent with interest in the possessor, which makes the land a homestead; a lender loaning money to persons in possession stands charged with notice of the homestead rights, irrespective of declarations to the contrary made by persons in possession. Nixon et al. v. Hirschi, Tex.Com.App., 132 S.W.2d 89.

In the case of Texas Land & Loan Company v. Jas. A. Blalock et al., 76 Tex. 85, 13 S.W. 12, 13, Chief Justice Stayton, after observing that the declaration in an application for the loan recited that the property was not the homestead of the applicant, said: " * * * Here nothing was hid-

den. Possession was open, certain, and in character in no respect ambiguous. It was such as gave homestead right, and the lender cannot be heard to say that it did not know it. The constitution forbidding the fixing on the homestead of liens other than such as are thereby expressly permitted, no estoppel can arise in favor of a lender, who has attempted to secure a lien on homestead in actual use and possession of the family, based on declarations of the husband and wife, made orally or in writing, contrary to the fact. To hold otherwise would practically abrogate the constitution."

It will serve no useful purpose to cite numerous authorities condemning loans of this nature. Indeed, the pronouncement of Judge Stayton in the above case has become a rule of property in this state. In the very recent case of the Commission of Appeals' opinion, written by Judge Taylor, approved by the Supreme Court, Nixon et al. v. Hirschi, 132 S.W.2d 89, 92, the contention of appellee is put to rest. The disposition of this appeal may well stand on the reasoning and conclusions stated in that opinion. After quoting from many decisions on cognate questions, the Commission of Appeals, in that case, said: "The fact that the holding of this, Court reflected in the above excerpt from the Blalock case has for many years been a rule of property in this State, is sufficient reason for declining to overrule it. Furthermore the Court shares the view expressed by Chief Justice Stayton that holding otherwise would abrogate that provision of the Constitution, Vernon's Ann.St.Const. art. 16, § 50, declaring that no mortgage, trust-deed, or other lien on the homestead shall ever be valid except for the purposes therein stated, by ultimately rendering such provision ineffective."

To hold, as in the majority opinion, that today a lien on a homestead is void and unenforceable, but may become valid and enforceable tomorrow, is a dangerous precedent, leaving wide open the door to abrogate the Constitution. Analysis of the holding shows that a lender may knowingly loan money on a homestead inhibited by the Constitution, hold its enforcement for a term, then assign the void and unenforceable lien to another, and, on representations of the homesteaders in the first instance that the lien is valid, such representations give to the subsequent assignee an enforceable contract, on the theory of eq-

uitable estoppel. In other words, equity breathes life into a transaction which otherwise lacks vitality—void under the law. It is a rule well recognized in this state that, the principles of equity will not invade any constitutional guaranty, or abrogate, or modify any positive law. It is elementary and fundamental that no equitable relief may be granted, where a legal or statutory right is positively declared. As in the Blalock case, supra, expressly approved in Nixon v. Hirschi, supra, " * * * nothing was hidden. Possession was open, certain, and in character in no respect ambiguous. It was such as gave homestead right, and the lender cannot be heard to say that it did not know it". No estoppel arises in favor of the lender under the facts of this case. While reluctant to differ with my associates, yet sincerity dominates my action. The judgment of the court below should be reversed and rendered, granting the injunction.

Dissent.