**HIRSCHI v. NIXON et al.**

No. 13529.

Court of Civil Appeals of Texas.
Fort Worth.

March 19, 1937.

Rehearing Denied April 16, 1937.

T. R. Boone, E. T. Duff, and Kearby Peery, all of Wichita Falls, for appellant.

John M. Martin and Mathis & Caldwell, all of Wichita Falls, for appellees.

BROWN, Justice.

Rose Lisle Nixon, joined by her husband, being the appellees, brought suit in the district court of Wichita county against John Hirschi, the appellant, the purpose of the suit being to remove the cloud cast upon the title to a certain improved lot and to prevent the foreclosure of a deed of trust, executed by the appellees in favor of appellant to secure a sum of money loaned by appellant to the appellees, the contention being that when the original loan, which will be referred to hereinafter, was made on this property, same constituted the homestead of the appellee Rose Lisle Nixon, who was the wife of one S. H. Howell, and that at the time the loan was procured from appellant, Hirschi, she and her husband were living on said property and occupying it as their homestead.

The facts developed are that on December 27, 1927, appellee Rose Lisle Nixon (then Mrs. Rose Howell) acquired certain property in the city of Wichita Falls, which we will refer to as No. 701 Travis street, being the property in controversy. At that time she also owned property located at No. 506 Travis street, and property that will be designated by us as the Tarter-Clark subdivision.

On September 6, 1928, desiring to borrow money on the property known as No. 701 Travis street, the said appellee applied to the agent for the Standard Savings & Loan Association for a loan in the sum of $1,500. At such time she filled out and made oath to a formal application describing the premises in controversy and stated that the property sought to be mortgaged was rent property, and that her homestead was the property known as the Tarter-Clark subdivision.

On September 18, 1928, the said loan association approved her application and agreed to make the loan, and said appellee executed a deed of trust on the premises in controversy to secure her note in the sum of $1,500. Such note was made to become due in 120 months from its date, and bore interest at the rate of 7¾ per cent.

Simultaneously with the execution of the deed of trust, the said appellee made and actually filed for record a homestead designation, wherein she specifically designated the Tarter-Clark subdivision property as her homestead; both she and her then husband having executed such instrument and having solemnly acknowledged the same before the Hon. Irvin J. Vogel, then a notary public in and for Wichita county.

After receiving said $1,500, so borrowed, in the early part of said 1929, appellee desired to borrow more money on the property in controversy, known as No. 701 Travis street, and had one Perkins to contact appellant Hirschi for the purpose of making the loan, and appellant agreed to loan appellee the sum of $2,500 on the property in controversy, conditioned that she furnish an abstract of title showing

good title in her, free and clear of all liens. The abstract being so furnished and examined by appellant's attorney, same disclosed both the $1,500 indebtedness, together with the deed of trust lien securing the same, and the homestead designation made by appellees covering the Tarter-Clark subdivision property.

Appellant, Hirschi, made specific inquiry of appellees touching the validity of the indebtedness and lien then existing, and theretofore executed to the Standard Savings & Loan Association, and the borrowers at the time represented to appellant that the debt and deed of trust lien were valid and binding. Appellant then informed appellees that he would not make the loan on the property unless the prior deed of trust lien was released, and offered to pay off the obligation then due the Standard Savings & Loan Association, which amounted to $1,524, and agreed to advance the remainder to appellees and to take a deed of trust from them securing the appellant in the total sum advanced, to wit, $2,500.

The record abundantly shows that appellees acquiesced fully in the matter and appellant, Hirschi, paid for and on account of the appellees said loan association the sum of $1,524, being the amount of principal and interest due on February 26, 1929.

The deed of trust was duly executed by Rose Lisle Howell and her husband, S. H. Howell, to secure appellant in the payment of a note duly executed in the sum of $2,500, payable in monthly installments of $31.25. This deed of trust contains the following language:

"We hereby certify that the above property is not our homestead or any part thereof and has never been, our homestead being located at 506 North Travis Street on other separate and distinct property.

"We understand that this representation is made for the purpose of securing the loan herein described and expect and intend that John Hirschi shall rely thereon."

On August 6, 1936, default in the payment of installments provided for in the loan note having been made, the trustee named in the deed of trust foreclosed the property and it was purchased by appellant. On the same day such sale was made, appellee filed suit in trespass to try title and for the purpose of declaring the deed of trust, in favor of appellant; void, as pointed out by us above. Her allegations, in substance, are that the property in controversy was at all of the times above mentioned her homestead on which she was living, and that same was at the time of the institution of her suit her homestead.

Appellant answered by a plea of not guilty and further that, appellee having represented to him that the said loan association's lien was valid, and he having advanced the sum of $1,524 to said loan association by reason thereof, appellees were estopped to question the validity of the lien to the extent of $1,524.

Appellant further pleaded the payment of certain taxes assessed against the property and prayed that, if the trial court should adjudicate the lien given to secure the loan of $2,500 as void, he be awarded a valid lien against the property to the extent of the $1,524 advanced as aforesaid, together with such money as was advanced by him for taxes.

After all evidence was introduced, the cause being tried to a jury, appellant made a motion for a general peremptory instruction, and also for a special instruction to the effect that in all events he was entitled to a lien for the sum of $1,524 advanced to said loan association, but his motions were overruled by the trial court, exception taken, and the cause submitted to the jury on special issues.

We do not believe that it is necessary to notice all of the findings made by the jury.

The jury found, among other things, that, when the first loan was made and the deed of trust executed to said loan association, Rose Lisle Nixon and her then husband, S. H. Howell, were actually occupying the premises in controversy, and further that it was their homestead, and similar findings were made with respect to the time when the second loan was made and the second deed of trust executed. The jury specifically found that at the time appellee Rose Lisle Nixon secured the loan from appellant, Hirschi, she represented to him that the $1,500 loan held by the loan association was a valid lien against the property in question. The jury further found that, at the time the loan was closed with appellant, said appellee did not request appellant to pay the said loan association the indebtedness due it, and further that neither said appellee nor her former husband, by acts or words, requested appellant to take up such loan. The jury further found that said appellee and her

then husband never intended to establish as a homestead the Tarter-Clark property, or the property referred to in their deed of trust to appellant as their homestead. The jury further found that a reasonably prudent person, situated as appellant, would not have believed that either of the properties designated as a homestead by appellee and her then husband actually constituted such homestead; and further that appellant did not believe that said appellee's homestead was in the Tarter-Clark subdivision in September, 1928; and further found that appellee and her then husband did not intend to deceive appellant at the time they made the declaration that their homestead was at a different place from the property on which the loan was made; and further found that appellant would have advanced the money to take up the loan association's debt if he had not believed appellee's homestead was in the Tarter-Clark subdivision.

We do not believe that any extended discussion is necessary in this case. The trial court rendered judgment adjudicating the title to the property in controversy in the appellee, subject only to the lien in favor of appellant for the $317 advanced by him in the payment of the taxes assessed against the premises and ordered the property sold to satisfy such tax lien, but denied the appellant all other relief. The appeal is from this judgment.

This case comes squarely within the rule laid down by this court in First Texas Joint Stock Land Bank v. Chapman et ux. (Tex.Civ.App.) 48 S.W.(2d) 651, writ dismissed; as well as Guaranty Bond State Bank v. Kelley (Tex.Com.App.) 13 S.W.(2d) 69.

After having procured the first loan from the Standard Savings & Loan Association and executed the deed of trust lien on the property in question to secure the same, and having specifically represented, for the purpose of securing that loan, that the property on which the lien was to be given was not her homestead but was rental property, and having specifically designated other property as her homestead and placed such designation on record in Wichita county, and thereafter having induced appellant to pay off such prior loan for her on the representation that the prior loan was secured by a valid lien against the premises in question, appellee and her present husband are estopped from denying the validity of the deed of trust lien executed theretofore to the Standard Savings & Loan Association.

In view of the undisputed facts and the plain admissions on the part of appellees, the findings made by the jury that the property in question was at all times the homestead of appellees and that they never intended to dedicate any other property as the homestead, and that appellees did not intend to deceive appellant, are wholly immaterial and furnish no basis for relief against the legal fraud actually shown to have been committed.

The findings that neither the appellee Rose Lisle Nixon, nor her former husband, either actually or by words or acts, requested appellant to pay the loan association its indebtedness, and that a reasonably prudent person, situated as Hirschi was, would not have believed that either of the properties designated as a homestead actually constituted such, and that appellant did not believe that appellee's homestead was in the Tarter-Clark subdivision, and that appellant would have advanced the money to take up the loan association's debt if he had not believed appellee's homestead was in the Tarter-Clark subdivision, are all immaterial findings under the record before us, and furthermore are without the support of evidence having probative force.

Appellee cannot admit the execution of papers, calculated to mislead a lender, and not deny the misrepresentations made to the effect that the first loan constituted a bona fide debt and valid lien, and defeat the right of the lender to foreclose his lien and collect the money advanced to take up the prior existing debt, on the specious plea that the property was at all times her homestead, that she never intended to deceive the lender, and that it was the duty of the lender to ascertain whether or not the property was her homestead when the first loan was made.

Furthermore, the writer is of the opinion that the facts in this case distinguish it from the ordinary case in which one pretends to give a good lien on a homestead in which the borrowers are at the time living.

Here the borrower has made a prior loan and placed of record a homestead designation covering other property, and requests another lender to advance more money on the property, at the time, representing that the prior loan is secured by a valid lien on the premises, and that the premises

are not the borrower's homestead, and designating other property as her homestead and stating that the representations and statement made are made to secure the loan and to induce the lender to advance the money.

This writer is of the opinion that the pendulum has swung too far in Texas in protecting those who deliberately enter into schemes to secure loans on their homesteads and then repudiate their solemn acts, on the specious plea that the lender was duty bound to make a minute investigation to ascertain whether or not the borrower is attempting to practice a fraud on him. The writer believes this protection should go to the innocent only and that the guilty should not receive it.

In the case before us, applying the holdings made heretofore, we are justified in reaching the conclusion that, under the facts before us, these borrowers are estopped from contending that the first loan made on the homestead cannot be enforced, because the appellant here did not make the first loan, but, regardless of what the status of the property was at the time the money was advanced to take up the first loan, and even make a larger loan, this lender is not duty bound to make inquiry as to the homestead status of the property when the first loan was made. The conclusion being reached on the theory that the borrowers represented to this last lender that the first loan was secured by a valid lien; that their acts made such representations appear to be true, and the lender could rely upon the representations.

With this reasoning and conclusion we are in unanimous accord.

Going further, the writer asks: If, with all these facts and circumstances before this last lender, he ought to be protected in so far as he has advanced money to take up the first loan, and it is not incumbent upon him to make any further inquiry into the validity of the first loan and lien, why is it inequitable, or unjust, to enforce the lien as it secures the increase of the loan, when the same parties who are guilty of perpetrating a fraud for the purpose of inducing the lender to take up the first loan have continued to make the same representations, holding out the premises as being free from homestead claims and exemptions, in order to obtain the increase?

The case before us is not one where the borrower, living on the property, asks the lender to make an original loan on the premises, representing that the property is not the homestead, and relies on the rule that the lender ought to make further inquiry into the status of the property, because the borrower is then actually occupying it.

The writer is of the opinion that the obtaining of money under such circumstances and by such fraudulent representations and means should not be countenanced by the courts, just as such fraudulent acts are denounced in every other transaction where money, or property is obtained through deliberate fraud.

Here we have a mingling of two frauds. Both are perpetrated by acts and representations of identical character and cover the same subject matter. In continuing these frauds the borrower is representing that the property both is not and was not the homestead of the borrower. The borrower wants the money obtained by the first fraud, or in the beginning of the fraudulent scheme, to be paid off and the debt extended by a new lender, and wants the loan increased. All this he gets, through a continuance of the original fraudulent scheme, and justice and equity should demand that he be made to stand to his bargain.

Had this borrower made fraudulent representations for the purposes of selling and not borrowing, every court in Texas would protect the buyer from loss, because he relied on the false representations made to induce him to part with his money. There should be no difference between the duty to inquire into the actual facts in the second instance more than in the first. There cannot·be found by sound reasoning, a just distinction between the two.

With these individual views the other members of this court do not agree. They adhere to the precedents heretofore set, and this case is decided on such precedents.

We do not believe that it is necessary to render judgment here finding the indebtedness in favor of appellant, Hirschi, and foreclosing the deed of trust lien, but we believe that the sale by the trustee, under the deed of trust, when default was made by appellees, conveyed the title and that same is now vested in appellant, who was the purchaser at such sale.

Accordingly, the judgment of the trial court is reversed and judgment is here rendered that · appellees take nothing by reason of their suit and that appellant do have and recover judgment for and possession of the premises in question as against appellees.