## BROWN et ux. v. FEDERAL LAND BANK OF HOUSTON et al.

### No. 14623.

Court of Civil Appeals of Texas.
Fort Worth.

April 21, 1944.

Rehearing Denied May 26, 1944.

Donald & Donald and Joe H. Cleveland, all of Bowie, and Jerome C. Chamberlain, of Dallas, for appellants.

**648**

Lewis Rogers and H. A. Berry, both of Houston, for appellees.

SPEER, Justice.

Appellants George Wesley Brown and wife, Alice Brown, instituted this suit in March, 1941, against appellee Federal Land Bank of Houston for injunction to prevent the sale under a deed of trust on a described 258 acres of land in Montague County, and for an accounting of the status of an indebtedness claimed by it to be owing by appellants.

Federal Land Bank answered and filed a cross action against appellants for a foreclosure of its asserted lien on the land and impleaded appellee Federal Farm Mortgage Corporation, another federal loaning agency, whose immediate predecessor was Land Bank Commissioner. See Act of Congress, 12 U.S.C.A. § 1020b.

Appellee Federal Farm Mortgage Corporation cross-actioned against appellants, the Browns, seeking a foreclosure of an asserted indebtedness and second lien on the land.

By appellants' amended pleadings, upon which trial was had, the asserted rights of Federal Land Bank of a debt for approximately $1650 and a lien on the land, is, in effect, confessed.

The controversy presented by this appeal is between appellants G. W. Brown and wife Alice Brown, and appellee Federal Farm Mortgage Corporation, arising from the latter's asserted debt and lien on the land. Appellants claim the land was their homestead for many years before the transactions here involved, was such at that time and continued to be so to the date of trial; that any asserted lien thereon held by Federal Farm Mortgage Corporation was void and grew out of a simulated transaction pretending to place a lien on their homestead in violation of the Constitution and laws of this State for an indebtedness and purpose not falling within those allowed by law or the Constitution to be created against the homestead.

Appellee Federal Farm Mortgage Corporation relies upon the contention that the Browns are estopped as a matter of law to assert the invalidity of the debt and lien on the land, sought to be foreclosed.

At the conclusion of a jury trial, the court instructed a verdict against appellants (Browns) and in favor of each of the appellees, Federal Land Bank of Houston, Texas, and Federal Farm Mortgage Corporation. As above indicated, appellants do not complain of the judgment in favor of the former named appellee, and in this respect nothing more need be said. Appeal was perfected as against the latter corporation, and for convenience in this discussion we will refer to the Browns as appellants and to Federal Farm Mortgage Corporation as appellee, except when necessary to mention them or some of them by name.

The record reflects without dispute many of the things contended for by parties on both sides. The land in controversy has been owned, used and occupied as a homestead by appellants for many years prior to the matters affecting this law suit, subject to an indebtedness for purchase money held by Federal Land Bank. They have not been out of physical possession and occupancy of it at any time since they purchased it in 1903 or 1904. There was a conflict in the testimony as to whether they held it as tenants, between the time they conveyed it to Roach in October, 1923, and when Roach conveyed it back to them in August of 1924. It is also undisputed that the wife did not join in the extension of maturity agreements executed by her husband with the owners of the note represented by the note sued on in the cross action. There is a conflict in the evidence as to whether or not Mrs. Brown acknowledged the purported deed of conveyance by her and her husband to S. C. Roach in 1923.

It was indisputably shown that in 1923, G. W. Brown was indebted to the Citizens National Bank of Saint Jo, Texas; that S. C. Roach was the cashier and operated the bank subject to the orders of its board of directors. Roach and G. W. Brown had negotiations with reference to the latter's debt to the bank, and it culminated in a conveyance of the land by Brown and wife to Roach on October 31, 1923. The conveyance was in form of a general warranty deed reciting a consideration of $1262.00 in cash and the assumption of payment by Roach of the balance unpaid on an indebtedness of $1650 held by Federal Land Bank of Houston. This instrument was filed for record. There is some difference of opinion by Roach and Brown as to the disbursement of the cash consideration, whether it was paid directly to Brown or enough of it applied to liquidate Brown's debt at the bank and the remainder to taxes and delinquencies on the Federal Land Bank's debt; but Brown said he supposed his debt

to the bank was paid out of that money because it did not again ask him to pay. We have above pointed out that Roach and Brown differed in their versions of the nature of Brown's possession and payment of rentals thereafter. The conveyance to Roach in 1923 is the instrument which Mrs. Brown said she did not acknowledge. Both appellants testified they knew they had made a deed to Roach and identified it, but in their own way of expressing it said it was made because they owed the bank and they did not ever expect to move off the premises and that Roach told them they would not be required to move.

On August 12, 1924, Roach and wife executed and delivered to G. W. Brown a warranty deed conveying the land, and Brown caused the deed to be recorded. The consideration recited in this conveyance was the assumption of payment by Brown of a balance of $1556.11 unpaid to Federal Land Bank and the execution by Brown and wife of two notes, one for $700, due on or before November 1, 1924, and another note for $807.50, due on or before November 1, 1925, payable to the order of S. C. Roach.

The record indicates that the $700 note was paid and certain payments on the $807.-50 note were made, prior to the time appellee claims to have purchased it. Subsequent to the execution of said notes, G. W. Brown (not joined by his wife) executed written agreements with respective owners of the $807.50 note for extension of maturity dates. The last instrument extended maturity to January 1, 1934. These agreements were recorded.

Subsequent to 1924, the Browns appear to have made oil and gas leases on parts of the land; holders of these claims were made parties but were disposed of in a way not necessary to relate.

There is an affidavit made by G. W. Brown on May 3, 1927, duly recorded, brought forward in the statement of facts. Among other things therein it recites: "That he (Brown) sold the said land in the year 1923 to S. C. Roach and bought it back in the year 1924, but at the time he sold to Roach he did not move off of the premises * * *."

On January 24, 1934, G. W. Brown made written application to the Land Bank Commissioner for a loan on the land for $1300; in the application he stated he acquired the land from S. C. Roach on August 12, 1924, for a consideration of $3000, of which $1500 was cash and the remainder in "mortgage or contract". That the farm had changed hands one time during the last ten years. The application contained a list of the debts and encumbrances on the land, among which was one listed as $750 incurred in 1924, and that S. C. Roach was the lien holder. Another item was $64.96 in taxes. The application contained substantially these representations: He had made the application for the purpose of procuring a loan on the land, that the statements made were true and correct; he had suppressed no information about the property that would affect its value; there were no encumbrances against the property except those mentioned; that if the loan was accepted he would furnish abstract of title showing perfect title in him and the "mortgage securing said loan", a second lien on the property described.

The Federal Land Commissioner made a potential approval of the loan for $1200; a form of release of the lien securing the $807.50 note was executed by Roach. A deed of trust was executed by appellants on May 11, 1934, in favor of a named trustee covering the land to secure a loan of $1200, all were placed on record and brought into the abstract and tendered to the Commissioner's attorney for examination, prior to disbursing the funds as provided by the application would be done.

In referring to the note and obligation being taken up by appellee, the deed of trust recited in substance: That it was the unpaid balance, principal and interest owing on a note for $807.50, the second one of a series of two notes executed by G. W. Brown on August 12, 1924, payable to the order of S. C. Roach, due November 1, 1925, secured by a vendor's lien, more fully described in a deed of even date therewith from S. C. Roach and wife to G. W. Brown. There are further recitations of the time and place of recordation of the deed. The provision in the deed of trust further recites: "And mortgagors hereby warrant that the indebtedness renewed is a valid lien on the above described land * * *." It contains a request for the lender to disburse the funds by paying the present owner for his debt whether it be transferred or released, and subrogates appellee to the lien of the holder of the indebtedness taken up by it. The deed of trust further provides, substantially, that there had been a written application made for the loan and that the loan was made

upon the representations therein contained; that each of the signers of the deed of trust (Mr. and Mrs. Brown) warranted to the Commissioner that all the statements made in the application were true and each adopted the terms thereof as fully as if signed by him or her.

Without contradiction in the evidence, a representative of appellee, charged with passing upon the loan and title to the security offered, testified that before the funds were disbursed all of the above described instruments, including the deed of trust, had been placed of record in Montague County and brought into the abstract, and were observed by him and those under his supervision and but for the contents, provisions and recitations therein, the loan would not have been made; that he relied upon the truth contained in each of the instruments in approving the title to the security for the loan. The witness said he had no knowledge that the deed from Brown and wife to Roach was made for any purpose other than shown on its face.

A stipulation of facts was made by the parties that the $1200 loan made by appellee, Federal Farm Mortgage Corporation, was disbursed by it as follows: To Federal Land Bank of Houston a total of $505.54, to cover the following items due it: on principal, $85.92; past due interest, $217.21; taxes paid by it on the land, $202.41. To the tax collector of Montague County, $44.-96; and $654.93 to S. C. Roach for the unpaid balance of principal and interest on note for $807.50, executed by George W. Brown to S. C. Roach, described in a deed from Roach and wife to G. W. Brown, dated August 12, 1924, recorded in a given volume and page of the Montague County deed records.

Appellants seek a reversal of the trial court's judgment on four points. They are, substantially, as follows: Court erred in instructing a verdict against appellants, because, (1) the issue of a mortgage on the homestead or a colorable sale thereof to Roach in 1923 was presented by competent evidence for determination by the jury; (2) the note sued on in appellee's cross action was one given by appellants to Roach, recited to be a part of the consideration for a conveyance of the land from Roach to appellants in 1924, and the two subsequent extension agreements as to maturity, were not signed by appellant Alice Brown; and the homestead right having previously vested, such extension agree-

ments of said note were void, "even if it were valid in its inception", and the note was therefore barred by limitations when the cross action was filed; (3) the issue of whether or not appellant Alice Brown appeared before a Notary Public and acknowledged the execution of the deed from appellants to Roach in 1923, in the manner required by law, was raised by the testimony and appellants were entitled to a jury finding thereon; and (4) the court erred in holding that appellants were estopped to defend against the note and lien sued on by appellee, under the terms of appellee's deed of trust in 1934, because the note was barred by limitation as to the wife, and no act or statement by her, oral or written, could give validity thereto in the face of her actual homestead rights, use and occupancy of the land.

As above pointed out, appellee's right of recovery was based upon its plea of estoppel as against the appellants' rights to rely upon the invalidity of any of the preceding transactions out of which the indebtedness and lien claimed by appellee grew. The trial court, in giving the peremptory instruction, sustained the plea of estoppel as a matter of law. Appellants' fourth point of error fairly presents the trial court's action in this respect for our determination.

As we view this appeal, whether or not the trial court properly sustained appellee's plea of estoppel, as raised by appellants' fourth point of error, is the controlling factor here. As above indicated, there was plenty of testimony offered to raise an issue of fact involved in appellants' points 1, 2 and 3. The testimony offered in support of the contentions there raised was obviously for the purpose of presenting a defense to appellee's plea of estoppel. Appellants requested special issues which, if answered, would have determined the matters inquired about. The court refused to submit any issue of fact but instructed a verdict on the theory of estoppel as a matter of law.

We overrule the points of error embraced in 1, 2 and 3, for the reason we have concluded that the peremptory instruction was properly given.

 It is fundamentally true that under our procedure only ultimate and controlling issues need be submitted in any case and refusing to give immaterial ones does not present error. 41 Tex.Jur. 1037, sec. 234. "It is always an answer to a request for an issue that a finding thereon one way

or the other would be immaterial." Speer's Law of Special Issues 211, sec. 162. The plea of estoppel was supported by the uncontradicted evidence, consisting in the main of documents executed by appellants, all duly recorded, but for which appellee would not have made the loan. It did not have any information which tended to show that those instruments did not speak the truth. If the requested issues of appellants had been submitted and answered favorably to their contentions, such a verdict would not have been a defense to the conclusively established plea of estoppel. The foregoing statement would be incorrect, if, as a matter of fact, the testimony had been conflicting on the issue of estoppel, but there being no conflict in this respect, there was no issuable fact for jury determination. The failure to submit their requested issues presents no reversible error. Rule 434, Texas Rules Civil Procedure.

If we properly understand the contention of appellants, it is that if it be established that the original deal between them and Roach was a simulated one in an attempt to place a lien on the homestead for a purpose not permissible under Constitution, Art. 16, Sec. 50, Vernon's Ann.St. or that the wife did not properly execute the deed of conveyance to Roach in 1923, or that the note executed by them to Roach in the reconveyance by him to them in 1924 was barred by limitation when appellee renewed and extended it in 1934, such matters would defeat appellee's right to foreclose its lien as against appellants on the grounds of estoppel. They rely upon the Constitutional provision above mentioned and such cases as Texas Land & Loan Co. v. Blalock, 76 Tex. 85, 13 S.W. 12; Nixon v. Hirschi, 134 Tex. 415, 136 S.W.2d 583; Lincoln v. Bennett, 138 Tex. 56, 156 S.W.2d 504; and Burkhardt v. Lieberman, 138 Tex. 409, 159 S.W.2d 847.

The cited cases were not decided upon the phase of estoppel now confronting us. In the Blalock case, supra [76 Tex. 85, 13 S. Ct. 13], the Blalocks were residing upon the property at the time they executed the deed of trust sought to be foreclosed; the husband had previously made affidavit that it did not constitute the homestead and the deed of trust reiterated the assertion. The court announced, concerning the facts there involved, that: "If property be homestead in fact and law, lenders must understand that liens cannot be fixed upon it, and that declarations of husband and wife to the contrary, however made, must not be relied upon." Under the facts there involved, we have seen no case by our Supreme Court where a different rule was announced. But it is obvious that the broad language used in the quoted part of the opinion could not be applicable in cases where a different state of facts exists. To construe the language literally, it would preclude the fixing of a lien on the homestead for the purposes specifically excepted by the provisions of article 16, section 50, of the Constitution. A careful reading of that opinion will inevitably drive one to the conclusion that no such invariable rule was attempted to be announced. The court in the same opinion specifically recognized the principle of law now confronting us, by use of this language: "It has been held that one remaining in possession of land, after having executed and permitted to be placed on record an absolute conveyance, could not rely upon his possession as notice of a secret agreement that the absolute conveyance, as between the parties to it, was only intended as a mortgage, and thus defeat the right of a subsequent innocent purchaser. *That, however, is not this case.*" (Emphasis ours).

Estoppel was involved in the Nixon-Hirschi case, supra. Nixon had borrowed $1500 from a loan company on property declared by her not to be her homestead. She decided later to borrow another $1000 from Hirschi, but Hirschi would make the loan only by taking up the previous loan. The Nixons were occupying the property as a homestead. The jury found as a fact that Hirschi did not believe that Nixon's homestead was on property other than the security offered when the loan was made by the loan company. See reported case, Tex. Civ.App., 103 S.W.2d 833. That the Nixons did not intend to deceive Hirschi and that he would have made the loan to take up the loan company debt if he had known Nixon did not live on property other than the security offered. Hirschi did not claim a subrogation to the loan company debt for $1500. He pleaded estoppel alone to defeat the homestead claim. It was held that he did not establish estoppel by a preponderance of the evidence and for that reason the Nixons recovered. Unless there is a legal fraud perpetrated by one person against another, and the latter is deceived thereby and acts to his hurt because thereof, no estoppel arises. We see no support for appellants' contention in the Nixon-Hirschi case.

In each of the cases of Lincoln v. Bennett and Burkhardt v. Lieberman, supra, purported liens on the homesteads had been attempted and the owners brought suits to clear their respective properties of the clouds thus created. Defendants were purchasers of the originally attempted liens; they plead estoppel as against the plaintiffs. The facts revealed that the property in each instance was homestead when the attempted lien was created. But that while the husband had stated to the lender that the original lien was valid, the wife in neither case had made any representations concerning it. Court properly held, we believe, that she was not estopped in virtue of her husband's representations. Thus it is apparent that those cases do not present the situation now before us. In the Lincoln-Bennett case [138 Tex. 56, 156 S.W.2d 505], Judge Sharp, speaking for the Supreme Court, recognizes that: "Our courts have in certain cases enforced against the homestead certain liens which were created neither for purchase money nor for improvements contracted for as provided for in the provision of the Constitution." He classifies such cases among those where parties enter into an apparently valid transaction, though it is simulated to represent an actual conveyance, but in fact is a mortgage and also when the owners represent that existing notes are valid mechanic's lien notes properly executed as provided by the Constitution. But he adds that the case under consideration was not of that class.

In support of appellants' second point, which raises the question of the $807.50 note being barred by limitation when appellee took it, because the wife had not joined in the extension of maturity agreements, they cite as authority Uvalde Rock Asphalt Co. v. Hightower, 140 Tex. 200, 166 S.W.2d 681, 143 A.L.R. 1366. That case is not authority for appellants' contention. For this reason: The lien there involved was a mechanic's lien debt required to be created by the joint act of the husband and wife, and therefore its renewal or extension of maturity likewise must be by both. In that case it is held that the husband alone may extend and renew maturity date of a vendor's lien note. Such a note, of course, is one given as a part of the purchase money and of necessity would have arisen before the homestead rights were vested. The debt sued on by appellee was in part a balance unpaid on the $807.50 vendor's lien note executed by the appellants to Roach, described in Roach's conveyance to them in

1924; G. W. Brown caused that deed to be recorded; in 1927 he made an affidavit showing that he had sold the land to Roach in 1923 and bought it back in 1924; G. W. Brown renewed and contracted to extend the maturity date of the vendor's lien note involved, on two occasions, and if his contracts were valid, under authority of the Hightower case, supra, the note was never barred by limitation prior to the time appellee took it up under the transaction here sued upon in cross action.

There are so many ways in which estoppel may arise, they need not be defined here, but broadly speaking, the general rule seems to be laid down in 17 Tex.Jur. 128, sec. 2, where this is said: "The idea or notion which inheres in the word 'estoppel' is that one, who by his speech or conduct has induced another to act in a particular manner, ought not to be permitted to adopt an inconsistent position, attitude or course of conduct and thereby cause loss or injury to such other." The quotation is supported by many cases cited in the footnote.

Discussing estoppel as applicable to a married woman, in Speer's Marital Rights in Texas, Third Ed., page 340, Sec. 273, this is said: "The principle is that if she is guilty of any positive act of fraud, or an act of concealment or suppression which in law would be equivalent thereto, which act, representation or concealment was intended to cause another to alter his position or condition, and her act has such effect, she is bound thereby, whether her act or representation be in keeping with truth or contrary thereto." The same authority, at page 351, Sec. 279, lays down this rule: "Precisely as she (a married woman) may preclude herself from asserting homestead rights against certain innocent mortgagees; not that the mortgage upon the homestead is valid, but that she shall not deny it, when in doing so she is guilty of a gross fraud toward one who is in no way blamable." The authorities cited in the above texts are numerous and are from the earliest history of Texas jurisprudence.

The appellants urge the invalidity of all transactions between them and Roach, out of which grew the note which forms the basis of appellee's debt and mortgage; they assert that the property was homestead at all times involved here and that they were occupying, using and enjoying it as such. It is not directly contended that their occupancy as a homestead was actually known to appellee but that since it was a fact,

appellee had constructive notice thereof, and that the slightest diligence on appellee's part would have apprised it of that fact. It is undisputed that all the documents relied upon by appellee were on record and were inspected by it, and that it relied upon them speaking the truth. It was held in Eylar v. Eylar, 60 Tex. 315, that persons dealing with such a title could rely thereon and would not be required to investigate matters of lesser dignity than the public records of the county where the land was situated.

In Ramirez v. Smith, 94 Tex. 184, 59 S.W. 258, 260, the same rule was announced as in the Eylar case. The court further said: "There are cases which, while recognizing the proposition that possession is sufficient to excite inquiry, hold that where the possessor has done something, such as making a deed to another, which is of record, which furnishes a sufficient answer to the inquiry arising, the possession does not impose the duty of further investigation. Eylar v. Eylar, 60 Tex. [315] 318 * * *." And many other cases of like kind. Our Supreme Court has consistently followed the rule laid down in the Eylar and Ramirez cases last cited. See National Bond & Mortgage Corp. v. Davis, Tex.Com.App., 60 S.W.2d 429, where many authorities are collated.

It was held in Heidenheimer Bros. v. Stewart, 65 Tex. 321, that if the owners of a homestead simulate a transaction by which a negotiable note would be secured by a valid lien on the homestead and by their acts, they succeeded in imposing upon an innocent party, they are estopped from denying the truth of their words and conduct.

Under somewhat similar facts to those before us, in case of Coskrey v. Morrison, Tex.Civ.App., 91 S.W.2d 902, error refused, it was held that where husband and wife execute and deliver an instrument purporting to be a warranty deed to their homestead and take in part payment vendor's lien note and assign such note and lien to a good-faith purchaser who takes the same without notice and pays value therefor, they are estopped, as against the claim of the holder of the note and lien, to set up the defense that the sale of the homestead was simulated.

The above announced rule of estoppel was followed by this court in Engell v. Union Central Ins. Co. of Cincinnati, Ohio, Tex.Civ.App., 81 S.W.2d 738, 739. There the husband and wife conspired with another to fraudulently create a lien on their homestead, by executing a pretended mechanic's lien thereon, for asserted improvements; no improvements were actually put on the property. The co-conspirator proposed to sell and assign the note and pretended lien to the Life Insurance Company. The company required of the home owners to make an affidavit that the lien had been created before the work was done and otherwise showing the lien to be valid and subsisting at the time of the application. The company took a note and deed of trust lien to cover and extend the mechanic's lien and note. After default the company sought to sell the property under its deed of trust. Makers sued to cancel the lien, setting up the simulated transaction as against their homestead. Court enforced the lien on the grounds of estoppel, using this language: "The facts, showing the simulated character of the transactions, were established by uncontroverted evidence, and, according to the well-recognized rule of decisions of this state, they sustained the plea of estoppel urged by defendant [the lender]." Citing many cases

Southland Life Ins. Co. v. Barrett, Tex. Civ.App., 172 S.W.2d 997, error refused, for want of merit, involved practically all the points now before us. There, estoppel precluded Mrs. Barrett, a homestead claimant, from asserting the invalidity of a purported lien on the homestead after the note had in fact been paid and the lien consequently discharged. In that case, at a time when the security was being occupied and used as a homestead, and after the note and lien had been fully discharged, the Barretts made written representations to the lender that $10,000 of the original indebtedness was then unpaid and constituted a valid lien on the property. The lender acted upon this representation and made the loan. Mrs. Barrett was at that time occupying the premises as a homestead. The court cited First Texas Joint Stock Land Bank v. Chapman, Tex.Civ.App., 48 S.W.2d 651, error dismissed, where it was held under the facts of that case that a homestead owner may lose his home to one who claimed a lien thereon for purposes other than those allowed by law, not on the ground that such a lien is valid but by reason of estoppel, by his conduct asserting the validity of the lien.

We have called attention to a limited number of cases holding that persons claim-

ing homestead rights as against purported lien holders may be estopped to assert such in defense of debts and apparent liens on the homestead which in their inception were void. The cited cases likewise cite many more which we have not attempted to bring forward. In addition to those above mentioned, we point out Whitaker v. Fulton, Tex.Civ.App., 17 S.W.2d 1079, error refused; Sanger v. Calloway, Tex.Com.App., 61 S.W.2d 988; Strauss v. Friedman, Tex. Civ.App., 109 S.W.2d 553, error dismissed; Scarborough v. Home Owners' Loan Corp., Tex.Civ.App., 161 S.W.2d 886, error refused, want of merit; Rabbe v. Federal Land Bank of Houston, Tex.Civ.App., 161 S.W.2d 1097, error refused want of merit; and Chandler v. Georgia Chemical Works, 182 Ga. 419, 185 S.E. 787, 105 A.L.R. 845, 855.

Based upon what we have said, we hold that no reversible error is shown in the refusal of the court to submit the requested issues of appellants, because their answers would have been immaterial. That there is no error shown in giving the peremptory instruction because there was no conflict in the testimony which showed that appellants were, as a matter of law, estopped to assert their homestead claims and the fraudulently simulated deed of conveyance thereto, as against appellee's cross action.

Finding no error in the record, the judgment will be and is hereby affirmed.